hinton 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-226-CV







THE UNIVERSITY OF TEXAS AT AUSTIN AND THE BOARD OF REGENTS


OF THE UNIVERSITY OF TEXAS SYSTEM,



 APPELLANTS


vs.





TRACY HINTON,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT





NO. 315,314, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 
 


 Tracy Hinton sued the University of Texas at Austin and the Board of Regents of
the University of Texas System to recover damages for injuries allegedly caused by their
negligence. She recovered judgment on the jury verdict as provided in the Texas Tort Claims
Act. (1) The University and the Board of Regents appeal. (2) Hinton appeals from that part of the
trial-court judgment that denies her claim for prejudgment interest. We will affirm the judgment.

THE CONTROVERSY



 In 1978 Hinton was an undergraduate student at the University of Texas at Austin. 
As she studied in the Academic Center on the University campus, a plastic grate from a light
fixture fell about five feet and struck Hinton in the head. She received emergency treatment for
cuts and bruises, but did not require hospitalization or sutures. 

 Hinton sued the University and Board of Regents, alleging their negligent failure
to secure the plastic grate proximately caused her physical and psychological injury. She
complained in particular of continuous headaches, a diminished ability to concentrate, changes in
personality, pain and suffering, and other problems.

 The jury found that $800,000 would reasonably compensate Hinton for past and
future injuries proximately caused by the negligence of the University. This sum, along with
$394,847.33 in prejudgment interest, exceeded the $100,000 recovery limit imposed by the Texas
Tort Claims Act. (3) The Defendants appeal from the resulting judgment awarding Hinton
$100,000, court costs, and postjudgment interest. In a cross-appeal, Hinton complains the trial
court erred in denying her claim for prejudgment interest.



THE PARTIES



 The first jury question inquired concerning the negligence of "the Defendant." The
third question asked whether "the University of Texas" was negligent. In their first two points
of error, the University and the Board of Regents allege the trial court erred in rendering a joint
and several judgment against the Defendants based on these findings. The Defendants argue that
the University and the Board of Regents are separate legal entities; therefore, to impose liability
on both, Hinton had to obtain jury findings that each entity was negligent, and that the negligence
of each was a proximate cause of her injury. The questions, as submitted, treated the University
and Board of Regents as one entity.

 We may not reverse the trial-court judgment on the ground that Hinton failed to
obtain a separate set of negligence findings as to each Defendant. The record reveals that the
parties uniformly pleaded the case just as the charge was submitted to the jury -- that "the
University of Texas" and "Defendant" were terms that encompassed both defendants. The jury
finding of negligence on the part of the "Defendant" and "the University of Texas" necessarily
encompassed both Defendants in their own usage of the term. Cf. Walsh v. University of Texas,
169 S.W.2d 993, 993 (Tex. Civ. App. 1942, writ ref'd n.r.e.) (stating that the University and the
Board of Regents are institutions of the state, and neither has any existence independent of the
state; therefore, any suit against either is in reality a suit against the state).

 If either contended for a misjoinder of parties, the obligation lay upon them to raise
and present the contention before the case was submitted to the jury; failing that, any complaint
was waived. Tex. R. Civ. P. Ann. 41 (Supp. 1991); see Barton v. Farmer's State Bank, 276 S.W.
177, 179 (Tex. 1925) (An objection to misjoinder of parties "should be pleaded in limine . . . or
at the first reasonable opportunity in any event [or] the right to make it is waived."); Dairyland
County Mut. Ins. Co. v. Estate of Basnight, 557 S.W.2d 597, 602 (Tex. Civ. App. 1977, writ
ref'd n.r.e.) (where plaintiff sued the "estate" of the deceased instead of the administrator of the
estate, the latter was bound by the judgment owing to his active participation in the case,
notwithstanding that the "estate" of a deceased person is not a legal entity). Neither Defendant
assailed its joinder or that of the other throughout the course of trial; it is a matter raised for the
first time on appeal. We hold the Defendants waived the complaint.



DISCUSSION OF INSURANCE



 During the voir dire examination by Hinton's attorney, a panel member asked about
Hinton's insurance coverage. The trial court instructed the panel that it was not to consider
insurance for any purpose during the trial. Nevertheless, some members of the panel expressed
concern that Hinton might be "double-dipping," that is, receiving payment from her insurance
company while attempting to recover from the Defendants as well. Hinton's attorney informed
the panel that Hinton had insurance coverage at the time of the accident, but that she would have
to repay the insurance company for any amounts recovered from the defendants. Arguing that this
left the impression that Hinton owed the insurance company money, the Defendants objected and
moved for a mistrial. The trial judge overruled the Defendants' motion for mistrial. In their
third, fourth and fifth points of error, the Defendants complain the trial court erred by allowing
Hinton's attorney to discuss Hinton's insurance coverage during the voir dire examination. 

 We do not agree that the trial court erred by allowing Hinton's counsel to state the
effect of insurance subrogation rights. It is true that a plaintiff may not inform the jury that the
defendant has insurance coverage, and a defendant may not inform the jury that a plaintiff has
insurance protection. Ford v. Carpenter, 216 S.W.2d 558, 559 (Tex. 1949). We have found no
authority, however, for the proposition that a party may not inform the jury of his or her own
insurance coverage. We hold the trial court did not abuse its discretion by allowing Hinton's
attorney to inform the panel of the relative rights of Hinton and her insurance company.

 Even if the trial court erred, we do not see how the Defendants were harmed. The
mention of insurance before a jury is not always reversible error. Dennis v. Hulse, 362 S.W.2d
308, 309 (Tex. 1962). The party appealing must show: (1) that the reference to insurance
probably caused the rendition of an improper judgment in the case; and (2) that the probability
that the mention of insurance caused harm exceeds the probability that the verdict was grounded
on proper proceedings and evidence. Id.; cf. Reviea v. Marine Drilling Co., 800 S.W.2d 252,
256 (Tex. App. 1990, writ denied) (holding that no harm was shown when a prospective juror
spontaneously brought up the issue of a party's insurance coverage). The logic behind the rule
excluding evidence of liability insurance is that a jury is more likely to find against a party who
is insured. Pride Transp. Co. v. Hughes, 591 S.W.2d 631, 634 (Tex. Civ. App. 1979, writ ref'd
n.r.e.). It would appear to work to the plaintiff's disadvantage to inform the jury that he or she
had health and accident insurance coverage at the time of the incident because jury members
would expect that the plaintiff had been adequately compensated.

 The Defendants argue that the large amount of damages awarded by the jury
demonstrates the harm required by Tex. R. App. P. Ann. 81(b)(1) (Pamph. 1991). We disagree. 
First, the trial court instructed the jury panel not to consider the existence of insurance for any
reason in their deliberations. We must presume the jury obeyed the instruction of the trial court
and disregarded the existence of insurance. Duncan v. Smith, 393 S.W.2d 798, 805 (Tex. 1965);
Hughes, 591 S.W.2d at 634. Second, the record as a whole must show harm to the complaining
party. Dennis, 362 S.W.2d at 310. From our view of the evidence, we cannot say the damages
awarded in this case were excessive in light of Hinton's evidence. Finally, the Defendants'
argument stands the exclusion-of-insurance rule on its head. Courts exclude evidence of the
existence of insurance because it is not relevant to the issue of liability and may improperly
influence the jury. Id. In contrast, Hinton's attorney discussed insurance in order to correct the
panel members' erroneous and prejudicial impression that Hinton was seeking a double recovery. 
We therefore do not believe that the size of the damage award alone indicates harm. We overrule
points of error three, four and five.



EXPERT TESTIMONY



 The Defendants complain the trial court erred by excluding the testimony of their
expert witness, Dr. Tindall. The trial court imposed this sanction against the Defendants because
they failed to supplement their answers to discovery requests. See Tex. R. Civ. P. Ann. 215(5)
(Supp. 1991).

 The rules of procedure impose certain requirements on a party who plans to call
an expert witness:



     If the party expects to call an expert witness when the identity or the subject
matter of such expert witness' testimony has not been previously disclosed in
response to an appropriate inquiry directly addressed to these matters, such
response must be supplemented to include the name, address and telephone
number of the expert witness and the substance of the testimony concerning which
the expert witness is expected to testify, as soon as practical, but in no event less
than thirty (30) days prior to the beginning of trial except on leave of court.


Tex. R. Civ. P. Ann. 166b(6)(b) (Supp. 1991) (emphasis added). A party who fails to supplement
his response to a discovery request may not offer the testimony of an expert witness unless the
trial court finds good cause exists to require admission of the testimony. Tex. R. Civ. P. Ann.
215(5) (Supp. 1991); see also Morrow v. H.E.B., Inc., 714 S.W.2d 297, 297-98 (Tex. 1986) (the
sanctions are automatic unless good cause is shown). The party offering the evidence has the
burden of establishing good cause, which must be shown in the record. Gee v. Liberty Mut. Fire
Ins. Co., 765 S.W.2d 394, 395 (Tex. 1989); Morrow, 714 S.W.2d at 298.

 Although the record is incomplete, we gather that in response to interrogatories the
Defendants supplied Dr. Tindall's name, address and telephone number. They also identified Dr.
Tindall as an expert who might testify "regarding the alleged injury of plaintiff and her physical
and mental condition." The Defendants did not supplement this response, even after it became
apparent at Dr. Tindall's deposition that he expected to testify as an expert on "brain-mapping,"
a controversial diagnostic technique.

 We cannot appraise the Defendants' assignment of error. We must presume that
the proceedings and judgment below were regular and correct. The burden lay upon the
Defendants to supply us an appellate record demonstrating the trial court abused its discretion in
excluding Dr. Tindall's testimony because they failed to supplement their answers as required. 
Tex. R. App. P. Ann. 50(d) (Pamph. 1991); Christiansen v. Prezelski, 782 S.W.2d 842, 843
(Tex. 1990). The Defendants were obliged therefore to include in the appellate record the
interrogatories and answers. They did not.

 The Defendants contend the burden lay upon Hinton to bring forward on appeal,
in the record, the written interrogatories; and, because she did not, there is nothing to show a
proper basis for excluding Dr. Tindall's testimony. We reject the contention because it reverses
the presumptions mentioned above. We must presume, rather, that the missing documents would
sustain the trial-court ruling. Forestpark Enter. v. Culpepper, 754 S.W.2d 775, 778 (Tex. App.
1988, writ denied).

 Alternatively, the Defendants contend their burden was satisfied by the statement
of facts, which includes statements by opposing counsel describing the answers to the written
interrogatories. Some are in quotation marks and appear to be quotations and summaries of those
answers. We cannot appraise from these statements alone whether the trial court abused its
discretion. There is nothing to indicate that these statements are complete or reasonably accurate
summaries or quotations of the answers. More importantly, these statements do not include the
questions posed in Hinton's written interrogatories.

 We therefore overrule points of error six and seven complaining of the exclusion
of Dr. Tindall's testimony.


VIDEOTAPED EXPERIMENT



 In their eighth and ninth points of error, the Defendants contend the trial court
erred when it allowed the jury to view, over objection, a videotape of an out-of-court experiment
conducted by Hinton's witness, a Mr. Brune. The videotape showed a plywood cutout, the size
of the plastic grate, falling and striking a dummy. The cutout represented the plastic grate; the
dummy represented Hinton. As they did at trial, the Defendants contend the experiment was not
substantially similar to the actual event and the prejudicial effect of the videotape outweighed any
probative value it might have had. They argue that the heavier plywood cutout struck the dummy
with much greater force than the plastic grate struck Hinton, leaving the jury with an erroneous
and prejudicial impression in that regard.

 Where, as here, the experiment is made out of court and in the absence of opposing
counsel, there must be a substantial similarity between the conditions depicted on the videotape
and the actual event that is the subject of litigation. Fort Worth & Denver Ry. Co. v. Williams,
375 S.W.2d 279, 281-82 (Tex. 1964); Wells v. HCA Health Servs., 806 S.W.2d 850, 853 (Tex.
App. 1990, writ denied). The conditions of the occurrence and experiment need not be identical. 
Williams, 375 S.W.2d at 282. The test for exclusion is whether the experiment would confuse
rather than aid the jury. Id. The trial court has broad discretion in determining the admissibility
of an out-of-court experiment, and a reviewing court will not overturn the trial court's decision
absent an abuse of discretion. Wells, 806 S.W.2d at 853. This is particularly true if the
dissimilarity is minor or if the differences are explained to the jury. Williams, 375 S.W.2d at 282. 

 We cannot conclude the trial court abused its discretion. Brune testified that the
videotaped experiment was not meant to be an exact duplication of the incident in which Hinton
was injured. He explained that he used plywood in his re-creation of the accident, instead of a
plastic grate, because he did not have access to a grate similar to the one which fell on Hinton. 
On cross-examination he testified that the purpose of the exhibit was to show how the grate fell,
not how forcefully the grate struck Hinton. We do not believe that the experiment reasonably
could have confused the jury by causing them to believe the incident occurred precisely as
depicted on the videotape. (4)

 Even if the trial court abused its discretion in admitting the videotaped experiment,
we do not believe the Defendants have carried their burden on appeal. To obtain reversal of a
judgment based upon an error of the trial court in admitting or excluding evidence, the appellant
must show (1) that the trial court erred, and (2) that the error was reasonably calculated to cause
and probably did cause the rendition of an improper judgment. Gee, 765 S.W.2d at 396. The
appellate court must examine the entire record to determine whether the disputed evidence
controlled the judgment. Id. Brune stated explicitly to the jury that the experiment did not
indicate how forcefully the grate struck, but only how the grate fell. We find in the record
nothing to diminish the effect of this qualifying statement, and nothing to indicate that the jury
disregarded it. The amount of damages found by the jury does not in and of itself indicate harm
to the Defendants -- the damages question asked the jury did not distinguish between psychological
and physical injury, or between "physical pain, mental anguish, and physical impairment." In this
state of the record, we would act without basis were we to conclude that the admission of the
videotape experiment amounted to such a denial of the Defendants' rights as was calculated to
cause and probably did cause rendition of an improper judgment, even if admission of the
videotape did constitute an abuse of discretion and therefore error. Tex. R. App. P. Ann. 81(b)(1)
(Pamph. 1991).

 We hold accordingly and overrule the eighth and ninth points of error.



ADEQUACY OF JURY ANSWERS



 Question No. 1 of the charge asked whether the Defendants were "negligent" and
whether "such negligence, if any, was a proximate cause of Plaintiff's injury, if any?" Questions
2, 3, and 4 asked, respectively, whether the Defendants were "responsible for the condition of the
light cover which allowed it to fall"; whether their "conduct with respect to the condition in the
light cover" was "negligence"; and whether such "negligence [was] a proximate cause of the
occurrence in question?" The jury answered each question "Yes."

 In their tenth point of error, the Defendants complain that these answers were
insufficient to establish their liability. They contend that Hinton has only a premises-liability
claim, and argue that the jury's answers will not support such a claim. (5) The Defendants
apparently contend that specific findings were required concerning: (1) whether Hinton's status
in the Academic Center was that of a licensee or an invitee; (2) whether the Defendants' conduct
fell within the character necessary to create liability under either status (gross negligence if Hinton
was a licensee or failure to make the premises reasonably safe if she was an invitee); and (3)
whether the Defendants knew of the unsafe condition of the light fixture or should have known
of it in the exercise of ordinary care.

 The charge included the ordinary definition of "negligence," that is to say, a
"failure to use ordinary care" or a failure "to do that which a person of ordinary prudence would
have done under the same or similar circumstances or doing that which a person of ordinary
prudence would not have done under the same or similar circumstances."

 We believe the jury answers to the broad-form submission of "negligence" will
support the verdict. First, a premises-liability case should be tried upon general negligence
principles. See Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983) ("[T]he
standard of conduct required of a premises occupier toward his invitees is the ordinary care that
a reasonably prudent person would exercise under all the pertinent circumstances."); see also
Tanner v. BDK Prod. Co., 671 S.W.2d 941, 943-44 (Tex. App. 1984, no writ). (6) The provisions
of Texas Rule of Civil Procedure 277 authorize the submission of broad-form questions when
"feasible." Tex. R. Civ. P. Ann. 277 (Supp. 1991).

 Second, the trial court was bound by the law of the case established in Hinton v.
University of Texas at Austin, No. 13,962 (Tex. App.--Austin, Apr. 11, 1984, no writ) (opinion
not published). There, we held that Hinton "was not a mere licensee, but enjoyed the status of
a `business invitee.'" This fixed, as a matter of law, the two propositions that (1) Hinton was
an invitee and (2) the Defendants owed a duty to make the premises reasonably safe for her. 
Consequently, there was no issue of fact concerning those propositions that a jury might
determine. See Allied Fin. Co. v. Shaw, 373 S.W.2d 100, 106 (Tex. Civ. App. 1963, writ ref'd
n.r.e.) ("The holdings announced in a former appeal constitute the law of the case."). We believe,
in addition, that the general negligence-res ipsa loquitur inquiry of Question Number 1 included
an inquiry whether the light fixture was unsafe and whether the Defendants knew or should have
known of its condition under the standard of ordinary care. See Tex. R. Civ. P. Ann. 277 (Supp.
1991); St. Louis Southwestern Ry. Co. v. Lawrence, 91 S.W.2d 434, 436 (Tex. Civ. App. 1936,
no writ) ("That the defendant knew, or by exercise of ordinary care could have known, of the
defective condition of the step is embraced within the jury's verdict in response to the general and
ultimate issue of negligence.").

 The Defendants appear to argue as well, under the same point of error, that the
doctrine of res ipsa loquitur, embraced in Question Number 1, is impermissible under the scope
of the state's waiver of sovereign immunity. We disagree. The doctrine, where applicable,
simply permits an inference of negligence from the happening of the event alone. Lemos v.
Montez, 680 S.W.2d 798, 801 (Tex. 1984). It is not a ground of recovery independent of
negligence.

 For the reasons given, we overrule point of error ten.



CUMULATIVE ERROR



 In their eleventh point of error, the Defendants contend that, even if none of the
alleged errors is sufficient by itself to warrant reversal, the cumulative effect of all of the errors
justifies our reversing the judgment and remanding the cause for a new trial.

 The supreme court has long recognized the doctrine of cumulative error. See
Smerke v. Office Equip. Co., 158 S.W.2d 302, 305 (Tex. 1941); see also Standard Fire Ins. Co.
v. Reese, 584 S.W.2d 835, 840 (Tex. 1979). A reviewing court may reverse a lower-court
judgment under the cumulative-error doctrine when the record shows a number of instances of
error, "no one instance being sufficient to call for a reversal, yet all the instances taken together
may do so." Sproles Motor Freight Lines, Inc. v. Long, 168 S.W.2d 642, 645 (Tex. 1943).

 In our analysis of the Defendants' first ten points of error, we found no error by
the trial court. We therefore overrule the Defendants' eleventh point of error.



PREJUDGMENT INTEREST



 Hinton concedes that the Texas Tort Claims Act provides a statutory limit of
$100,000 on damages, but she contends in a cross-point that the trial court erred by subtracting
prejudgment interest from her damage award. She contends the Act applies only to "money
damages," and prejudgment interest does not fall within that category. We disagree.

 At the time of Hinton's injury, the Texas Tort Claims Act limited the liability of
a unit of state government to $100,000. See Texas Tort Claims Act, 1969 Tex. Gen. Laws, ch.
292, at 874 (Tex. Rev. Civ. Stat. Ann. art. 6252-19, § 3, since repealed and codified as amended
at Tex. Civ. Prac. & Rem. Code Ann. § 101.023(a) (Supp. 1991)). The Texas Supreme Court
has held that the Act precludes the award of prejudgment interest when the damages found by the
jury exceed $100,000. Weller v. State, 682 S.W.2d 234, 234 (Tex. 1984).

 Hinton advances several arguments in support of a contention that Weller no longer
controls on this issue. She argues first that the supreme court impliedly overruled Weller in
Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex. 1985). In Cavnar, the supreme
court said, "We therefore hold that, as a matter of law, a prevailing plaintiff may recover
prejudgment interest compounded daily . . . on damages that have accrued by the time of
judgment. To the extent that other cases conflict with this holding, they are overruled." Id. at
554 (emphasis in original). Hinton contends that Weller conflicts with Cavnar and was thus
overruled.

 We believe Weller does not conflict with Cavnar. Like Hinton's case, Weller
involved a suit against a governmental unit. In contrast, Cavnar was a suit between private
parties. To hold that the supreme court overruled Weller in Cavnar, we would have to hold that
the supreme court impliedly interpreted section 101.023 of the Civil Practices and Remedies Code
to allow prejudgment interest in excess of the statutory limit on the state's liability. This we
decline to do. (7) We believe the supreme court had to specifically apply its prejudgment interest
rule to governmental units to overrule Weller. Although the supreme court used broad language
in Cavnar, we cannot conclude that it intended by its decision an implied and general waiver of
a governmental unit's immunity from liability for sums in excess of the $100,000 fixed by the
legislature in the Tort Claims Act. See Whipple v. Deltscheff, 731 S.W.2d 700, 705 (Tex. App.
1987, writ ref'd n.r.e.) (rejecting without discussion of Cavnar a claim that a plaintiff could
recover prejudgment interest in excess of the statutory limit on liability).

 Hinton asserts next that her claim for prejudgment interest comes within an
exception to the statutory "cap," which limits the amount of "money damages" a party can
recover. Tex. Prac. & Rem. Code Ann. § 101.023 (1986 & Supp. 1991). She argues that
Cavnar established a distinction between prejudgment interest and money damages; therefore,
prejudgment interest is not subject to the statutory limitation on money damages. We reject this
reasoning as well. Even statutory language is subject to the interpretive rule that a waiver of
governmental immunity will not be inferred in the absence of clear and unambiguous language.
Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980). The language of Cavnar contains no clear
and unambiguous abolition of the government's immunity from liability, in whole or in part. 
Because the legislature has not expressly waived the Defendants' immunity in prejudgment interest
claims, Cavnar provides no exception to the rule of statutory immunity. See City of Houston v.
Arney, 680 S.W.2d 867, 875 (Tex. App. 1984, no writ) (stating that sovereign immunity cannot
be waived by implication, but must be expressly waived); see also University of Tex. Medical
Branch v. York, 808 S.W.2d 106, 111 (Tex. App. 1991, no writ) (denying prejudgment interest
in a suit against a governmental entity); Whipple, 731 S.W.2d at 705 (same).

 In her third argument, Hinton points to article 5069-1.05, which, as recently
amended, requires a trial court to award prejudgment interest in personal-injury cases. Tex. Rev.
Civ. Stat. Ann. art. 5069-1.05 (Supp. 1991). She argues that this statutory change confers upon
her a statutory right to interest and renders Weller inapplicable. We reject her reasoning on
several grounds. The 1987 amendment to article 5069-1.05 applied only to an action commenced
on or after September 2, 1987. (8) See 1987 Tex. Gen. Laws, 1st C.S., ch. 3, § 3, at 52. Hinton
filed her suit in 1980, well before the effective date of the amendment to article 5069-1.05. 
Therefore, she has no statutory right to prejudgment interest. Even assuming she had such a
right, the amendments do not purport to deal with the matter of prejudgment interest in relation
to sovereign immunity. In the absence of an explicit waiver of sovereign immunity by the
legislature, we cannot impute to the amendments such a waiver by implication. (9)

 Finally, Hinton argues that, as a matter of public policy, the prejudgment interest
statutes should apply to the state as well as to private litigants. She contends the state, which
benefits from a statutory limit on damages, has no incentive to settle a case or to go to trial. As
evidence of this, she declares that "the state allowed this case to drag on for ten years." We find
the argument strained in light of the record presented to us on appeal. The record shows that
Hinton filed motions for continuances regarding trial settings in 1983, 1985, 1986 and 1988. 
While it is possible the state abuses its protection from prejudgment-interest awards in some cases,
we do not believe it did so in this case, and it is a matter for the legislature's consideration in all
events. We overrule Hinton's cross-point of error.

 Finding no error in the trial court's actions, we affirm the judgment below.



 

 John Powers, Justice

[Before Justices Powers, Jones and B. A. Smith]

Affirmed

Filed: December 11, 1991

[Publish]

1.   Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001--.109 (1986 & Supp. 1991).
2.   Except where a distinction between the two defendants is necessary, we will refer to
the University and the Board of Regents collectively as "the Defendants."
3.   See Texas Tort Claims Act, 1969 Tex. Gen. Laws, ch. 292, at 874 (Tex. Rev. Civ. Stat.
Ann. art. 6252-19, § 3, since repealed and codified as amended at Tex. Civ. Prac. & Rem.
Code Ann. § 101.023(a) (Supp. 1991)).
4.   We note that the Defendants did not request a limiting instruction to restrict the
jury's consideration of the videotape evidence to how and why the grate fell. Nor did the
Defendants rebut Brune's testimony that the plywood and plastic grate would have fallen
at virtually the same velocity. Finally, the Defendants presented no evidence that the
plywood struck the dummy with more force than the plastic grate struck Hinton. 
5.   The Texas Tort Claims Act provides, "If a claim arises from a premise defect, the
governmental unit owes to the claimant only the duty that a private person owes to a
licensee on private property, unless the claimant pays for the use for the premises." Tex.
Civ. Prac. & Rem. Code Ann. § 101.022(a) (1986).
6.   The Texas Tort Claims Act provides broadly and simply that a governmental unit in the
state is liable for "personal injury . . . caused by a condition or use of tangible personal or real
property . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (1986). 
7. The Texas Supreme Court arguably has the power to abrogate sovereign immunity. 
See Glen A. Majure, W.T. Minick & David Snodgrass, Comment, The Governmental
Immunity Doctrine in Texas -- An Analysis and Some Proposed Changes, 23 Sw. L.J. 341, 347
(1969) (stating that governmental immunity in Texas is a common-law doctrine, so the
legislature or the courts may modify or eliminate the doctrine). If so, the court could
presumably interpret the Texas Tort Claims Act to allow prejudgment interest in excess of the
statutory limit as well. The supreme court has indicated, however, that it will defer to the
legislature's discretion on the issue of the waiver of sovereign immunity. Lowe v. Texas Tech
Univ., 540 S.W.2d 297, 298 (Tex. 1976). In any event, we will not infer such an abrogation
when the supreme court simply states a general rule, such as that it will allow prejudgment
interest in personal injury suits, and does not expressly apply the rule to governmental units.
8. Hinton argues that the legislature made the prejudgment-interest statute retroactive
in 1989. That is not the case. The 1989 amendment to article 5069-1.05 added section 7,
which deals only with condemnation cases, and made that provision retroactive. The 1989
Act did not affect the remainder of the statute. See 1989 Tex. Gen. Laws, ch. 626, § 2, at
2095.
9.   The Defendants call our attention to Texas Dep't of Mental Health and Mental
Retardation v. Petty, No. 3-90-002-CV (Tex. App.--Austin, Aug. 28, 1991, n.w.h.). In Petty
this Court denied prejudgment interest in a suit filed against a governmental entity. That case
is distinguishable from Hinton's case because Petty filed her suit after the effective date of the
1987 amendment to article 5069-1.05. The rationale for denying prejudgment interest is the
same in both cases, however: We will not assume the legislature implicitly abrogated a
governmental unit's sovereign immunity.