Opinion filed April 6, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed April 6, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00199-CV 

                                                     __________

 

                               NATIONAL
FREIGHT, INC., Appellant

 

                                                             V.

 

                                          JOHN
SNYDER, Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 6766-D

 



 

                                                                   O
P I N I O N

 








This appeal arises from a motor vehicle
accident.  A vehicle driven by John
Snyder collided with a tractor-trailer owned by National Freight, Inc. when the
tractor-trailer entered a highway in the path of Snyder=s
vehicle.  Snyder suffered a fractured
left wrist in the accident.  Snyder filed
suit against National Freight and the driver of the truck.  At trial, National Freight admitted its
driver=s
liability for causing the accident. 
Accordingly, the only questions submitted to the jury were Snyder=s damages as a result of the
accident.  The jury awarded Snyder
damages in the amount of $250,000.  Based
upon the jury=s
verdict, the trial court entered judgment in favor of Snyder in the amount of
$279,142.64 plus court costs and postjudgment interest.  National Freight raises eight issues on
appeal challenging the trial court=s
judgment.  We affirm in part and reverse
and remand in part.

                                                          Improper
Jury Argument

In Issue No. 1, National Freight contends that
Snyder=s counsel
made an improper  argument to the
jury.  On several instances during
closing argument, Snyder=s
counsel asked the jury to Asend
a message@ to
National Freight by awarding Snyder substantial damages to encourage the safe
operation of National Freight=s
trucks in Taylor County.  National
Freight asserts that this argument was improper because Snyder did not seek the
recovery of exemplary damages.

To obtain reversal of a judgment on the basis of
improper jury argument, National Freight must prove:  (1) an error; 
(2) that was not invited or provoked; (3) that was preserved at trial by
a proper objection, motion to instruct, or motion for mistrial; and (4) was not
curable by an instruction, a prompt withdrawal of the statement, or a reprimand
by the trial court.  Standard Fire Ins.
Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979).  Our review of an improper jury argument claim
must cover the whole case, which begins with the voir dire and ends with
closing argument.  Id. at
840.  The complainant must show that the
probability the improper argument caused harm is greater than the probability
the verdict was grounded on the evidence. 
Id. at 840.

National Freight objected to the first instance
when Snyder=s counsel
urged the jury to send a message to National Freight.  The trial court responded to the initial
objection by instructing the jury that Awhat
the lawyers say is not evidence.@  The trial court sustained National Freight=s subsequent objections when Snyder=s counsel repeated the argument.  National Freight did not seek an instruction
from the trial court for the jury to disregard the argument on these subsequent
occasions.  Furthermore, the trial court
did not voluntarily instruct the jury to disregard the argument when it
sustained National Freight=s
objections.








As reflected in the preceding paragraph, National
Freight did not ask for a curative instruction from the trial court each time
the challenged argument occurred.  See
Fowler v. Garcia, 687 S.W.2d 517, 520 (Tex. App.CSan
Antonio 1985, no writ)(Failure to press for an instruction at the time of an
allegedly erroneous jury argument operates as a waiver of any complaint that
may be made as to the argument.). 
However, a party is not required to preserve error if the argument is
deemed to be incurable.  Otis Elevator
Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968). Furthermore, an improper jury
argument will not result in a reversal under the Reese standard unless
it was incurable.  Id. at 839-40.

An incurable argument is one that is so
inflammatory that its harmfulness cannot be eliminated by an instruction to the
jury to disregard it.  Otis Elevator
Co., 436 S.W.2d at 333.  There are
only rare instances when incurable harm results from improper argument.  Reese, 584 S.W.2d at 839.  The previously recognized types of incurable
argument have included: (1) appeals to racial prejudice; (2) the use of
inflammatory epithets such as Aliar,@ Afraud,@ Afaker,@ Acheat,@ and Aimposter;@ and (3) unsupported charges of
perjury.  Id. at 840.

We conclude that the argument urging the jury to
send National Freight a message did not constitute incurable jury
argument.  This argument was not so
inflammatory that a timely instruction from the trial court would not have
alleviated the harm, if any, caused by the argument.  Moreover, 
the record does not reflect a greater probability that the jury=s verdict was based upon the challenged
argument rather than the evidence presented at trial.  National Freight=s
Issue No. 1 is overruled.

                                                              Evidentiary
Rulings

National Freight challenges four evidentiary
rulings made by the trial court. 
National Freight has presented these complaints in separate sub-issues
identified as Issues Nos. 2(a),  2(b),
2(c), and 2(d).  We address each of the
sub-issues separately and treat them as separate issues on appeal.  

The admission and exclusion of evidence is
committed to the trial court=s
sound discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753
(Tex. 1995). An appellate court must uphold the trial court=s evidentiary ruling if there is any
legitimate basis for the ruling. State Bar of Tex. v. Evans, 774 S.W.2d
656, 658 n.5 (Tex. 1989). The court should not reverse a trial court for an
erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment. See Tex. R.
App. P. 44.1; see also Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989). In making this determination, we review the entire
record.  Alvarado, 897 S.W.2d at
754.

                                                   Estimates
of Future Medical Care








National Freight argues in Issue No. 2(a) that the
trial court erred in admitting documents that reflected the costs of future
medical care.  Snyder presented the
videotaped deposition testimony of Dr. Oliver Lee Kesterson III, M.D. at
trial.  Dr. Kesterson testified that
Snyder needed to have neck surgery as a result of the injuries he suffered in
the accident.  With regard to the cost of
the surgery Snyder might need in the future, Dr. Kesterson testified as
follows:

Q.        Okay.  Doctor, the -- the surgery that we talked
about, I went ahead -- and got some estimates on that, and I=d like to see if -- if these seem
reasonable to you for the procedure.  The
-- your office was kind enough to forward to me an estimate on what your fees
would be for this -- this particular procedure, and that is approximately
$23,127.60.  Could you look at this,
Doctor, and -- and identify that for me?

 

A.        I=m going to admit my ignorance to what I
bill.  I=m
shocked it=s -- I
mean, I don=t -- I
just -- I don=t
know.  I guess if -- if Wendy Christensen
sent that to you, then I guess that=s
what we bill.

 

Q.        Okay.  That is --

 

A.        Collecting
is a little bit different deal.

 

Q.        I
understand.  But is this -- is this -- is
this a fair or -- or an accurate representation of the procedure that would
need to be done on -- on Mr. Snyder?

 

A.        Yes,
it is.

 

Q.        And
is it from your office?

 

A.        Yes.

 

Q.        Okay.  And would these -- well, you don=t -- do you know whether or not these
are the usual and customary charges?

 

A.        If
Wendy Christensen says that, I have to assume that=s
true.

 

....

 

Q.        I=m going to show you what I=ve marked as Exhibit Four, Doctor, and
ask if you can identify what that is, please.

 

A.        It
is a fee estimate from somebody with A.C.E. Anesthesia.

 

Q.        Okay.  And that would be for the anesthesia during
the surgery, correct?

 

A.        I
presume so.








 

            Q.        Okay.

 

            A.        I know Doctor Leonard is part of that.

 

            Q.        Okay. 
Do you know, Doctor, whether or not those are -- usual and customary
charges for anesthesia?

 

            A.
       I couldn=t
comment on that.

 

            Q.        Okay. 
And finally, I=m
going to show you what I=ve
marked as Exhibit Number Five and ask if you can identify what that is.

 

            A.        A letter from Texas Health Resources,
upcoming -- an estimate of charges for upcoming surgery at Harris Methodist
Fort Worth.

 

            Q.        Okay. 
Do you have an opinion, Doctor, as to whether or not the -- the charges
reflected in that exhibit are usual and customary charges for a like procedure?

 

            A.        It sounds familiar, but I -- you know, I=m not the person that would know that,
but I -- it sounds about right.

 

At the conclusion of Dr. Kesterson=s
videotaped deposition testimony, Snyder offered into evidence the written
surgery estimate prepared by Dr. Kesterson=s
office and the written hospital estimate referenced during his deposition.  National Freight objected to the admission of
these documents on the basis that Dr. Kesterson indicated in his testimony that
he lacked sufficient personal knowledge of the costs reflected in the
documents.[1]  National Freight appeals the trial court=s rulings overruling the objections.








To sustain an award of future medical expenses,
the plaintiff must present evidence to establish that in all reasonable
probability future medical care will be required and the reasonable cost of
that care.  See Rosenboom Mach. &
Tool, Inc. v. Machala, 995 S.W.2d 817, 828 (Tex. App.CHouston [1st Dist.] 1999, pet.
denied).  Tex. R. Evid. 602 requires a witness to have personal
knowledge of the matters addressed in his or her testimony.  However, Rule 602 is expressly made subject
to the provisions of Tex. R. Evid.
703.  Rule 703 provides that an
expert may base his or her testimony on facts or data that may not be
admissible if the facts or data are of a type reasonably relied upon by the
expert.  With respect to the estimate for
his services, Dr. Kesterson indicated that he based his opinion on the
information supplied by a person in his office. 
This statement addresses the reasonable reliance requirement of Rule 703
for Dr. Kesterson=s expert
opinion on the cost of his services for the future surgery.  Dr. Kesterson also testified that the
estimate of the hospitalization costs Asounded
about right@ to
him.  Moreover, the evidentiary rulings
that National Freight is challenging were to the admission of the documents
that contained the written estimates to which Dr. Kesterson had previously
testified without objection.  When
erroneously admitted evidence is merely cumulative, any error in its admission is
harmless.  Gee, 765 S.W.2d at
396.  We conclude that the trial court
did not abuse its discretion in admitting the written estimates into
evidence.  Furthermore, to the extent
their admission may have been error, such error was harmless.  National Freight=s
Issue No. 2(a) is overruled.

                                              Evidence
of Health Insurance Coverage

In Issue No. 2(b), National Freight attacks the
trial court=s denial
of its request to present evidence regarding Snyder=s
health insurance coverage.  The
collateral source rule precludes a tortfeasor from obtaining the benefit of, or
even mentioning, payments to the injured party from sources other than the
tortfeasor.  See Taylor v. Am.
Fabritech, Inc., 132 S.W.3d 613, 626 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied).  If a
plaintiff claims financial hardship, however, evidence of a collateral source
may be offered to impeach the credibility of the witness.  See Macias v. Ramos, 917 S.W.2d 371,
374 (Tex. App.CSan
Antonio 1996, no writ).  National
Freight contends that Snyder opened the door in the following testimony
elicited from his wife during cross- examination:

Q. 
      You know that this lawsuit is
about money, right?

 

A. 
      Yes, sir.

 

Q.        And
you want to help your husband get money in this lawsuit, don=t you?

 

A.        Well,
we can=t have
the surgeries without money.

 

....

 








            Q.        Okay. 
Mr. Snyder hasn=t
had surgery to his neck, has he?

 

            A.        No, sir.

 

            Q.        Mr. Snyder has not had surgery to his
low back, has he?

 

            A.        No, sir.

 

            Q.        All right.  As we sit here today, there [are] no firm
plans to have surgery to his neck, [are] there?

 

            A.        We=ve -- we=ve
-- we=ve -- we=ve scheduled appointments, but we=ve had to change them because of the
court dates being changed because we didn=t
have the money to go have the surgery done.

 

In response to the above-quoted testimony, National Freight
requested to offer evidence regarding Snyder=s
health insurance coverage.  The request
was denied.  In making an offer of proof
outside of the jury=s
presence, National Freight subsequently asked Mrs. Snyder several questions
about her husband=s
insurance coverage.  Mrs. Snyder
testified that, while her husband had health insurance coverage, it had paid Avery little@
of his previous bills and that she anticipated that it would only pay a small
amount of the costs of the health care services he would receive in the future.

The record does not reflect that the trial court
abused its discretion in denying National Freight=s
request to offer collateral source evidence. 
The assertion that Snyder opened the door by presenting evidence
regarding financial hardship is tenuous given the fact that the testimony was
given by a non-party spouse during cross-examination.  Furthermore, the  evidence developed during the offer of proof
indicates that a large portion of Snyder=s
future medical care would not be covered by insurance.  National Freight=s
Issue No. 2(b) is overruled.

                                     Evidence
of Injuries= Effect
on Work








In Issue No. 2(c), National Freight contends that
the trial court erred in permitting Snyder to testify over objection about the
effect of his injuries on his ability to work. 
National Freight contends that this evidence was irrelevant because
Snyder did not seek a recovery for lost income. Snyder=s
counsel asserted that the testimony was relevant to the effect of his injuries
on his physical condition.  Snyder
testified that the injuries caused him pain when working as a self-employed
mechanic and rancher.  We agree with the
trial court=s
determination that this evidence was relevant to Snyder=s
claims for pain and suffering and physical impairment.  Issue No. 2(c) is overruled.

                                                            Surveillance
Evidence

National Freight=s
Issue No. 2(d) concerns the playing of a surveillance video showing Snyder at
work at his mechanic shop.  The trial
court did not permit National Freight to show a six-second portion of the video
depicting Snyder engaging in movements with his arm that appeared to be the
simulation of an inappropriate act. 
National Freight asserts that the trial court erred in denying admission
of the challenged portion of the video because it was the only portion of the
video that  revealed Snyder=s full range of motion with his injured
arm.

Tex. R.
Evid. 403 provides that relevant evidence may be excluded if its
probative value is substantially outweighed by danger of unfair prejudice.   When a party objects under Rule 403, a trial
court must conduct a balancing test, weighing the danger of prejudice against
the probative value of the evidence.  See
Waldrep v. Tex. Employers Ins. Ass=n,
21 S.W.3d 692, 703 (Tex. App.CAustin
2000, pet. denied).  AUnfair prejudice@
means an undue tendency to suggest a decision on an improper basis, commonly,
though not necessarily, an emotional one. See Weidner v. Sanchez, 14
S.W.3d 353, 365 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).

As noted by the trial court, the conduct depicted
in the video was inflammatory.  Many
jurors likely would have been offended by it. 
From a probative value standpoint, the challenged portion of the video
was only a small portion of a much longer video showing Snyder working in his
shop.   One of the remaining portions of
the video showed Snyder using both of his arms to pick up a large object.  We conclude that the trial court did not
abuse its discretion in determining that the probative value of the excluded
surveillance video was substantially outweighed by the danger of unfair
prejudice.  National Freight=s Issue No. 2(d) is overruled.

                                                                Cumulative
Error








In Issue No. 3, National Freight asserts that the
errors it has alleged in Issues Nos. 1, 2(a), 2(b), 2(c), and 2(d) constitute
cumulative error requiring the reversal of the trial court=s judgment.  Some reviewing courts have recognized a Acumulative-error doctrine@ in situations wherein the record shows
multiple errors that in isolation are not reversible but in combination give
rise to reversible error.  Univ. of
Tex. at Austin v. Hinton, 822 S.W.2d 197, 205 (Tex. App.CAustin 1991, no writ).  The cumulative-error doctrine does not apply
in this case, however, because we have found no error committed by the trial
court with respect to the preceding 
issues asserted by National Freight.  
See Hinton, 822 S.W.2d at 205. 
National Freight=s
Issue No. 3 is overruled.

                           Sufficiency
of the Evidence - Past and Future Medical Expenses

In Issue No. 4, National Freight attacks the legal
and factual sufficiency of the evidence to support the jury=s award of damages to Snyder for past
and future medical expenses.  The jury
awarded Snyder $23,000 for past medical expenses and $40,000 for future medical
expenses.  In analyzing a legal
sufficiency issue, we must consider the evidence in the light most favorable to
the verdict and indulge every reasonable inference that supports it. City of
Keller v. Wilson, 168 S.W.3d 802, 821-22 (Tex. 2005).  The evidence is legally sufficient if it
would enable reasonable and fair-minded people to reach the verdict under
review. Id. at 827-28. We credit favorable evidence if reasonable jurors
could and disregard contrary evidence unless reasonable jurors could not. Id.
The trier of fact is the sole judge of the witnesses=
credibility and the weight to be given their testimony. Id. at 819-21.
We cannot substitute our judgment for that of the jury so long as the evidence
falls within the zone of reasonable disagreement. Id. at 821-22.  We may sustain a no-evidence challenge only
when (1) the record discloses a complete absence of a vital fact, (2) the court
is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the only evidence offered to prove
a vital fact is no more than a mere scintilla, or (4) the evidence conclusively
establishes the opposite of a vital fact. Id. at 810.  In determining the factual sufficiency of the
evidence, we consider and weigh all the evidence and set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986);
In re King=s
Estate, 244 S.W.2d 660, 661 (Tex. 1951).








With respect to past medical expenses, National
Freight contends that there is no competent evidence of the causal relationship
between Snyder=s medical
expenses and the accident.  Snyder filed
several medical services affidavits listing medical expenses totaling
$22,839.86.[2]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 18.001 (Vernon 1997).  We held in Beauchamp v. Hambrick, 901
S.W.2d 747, 749 (Tex. App.CEastland
1995, no writ), that filing affidavits in compliance with Section 18.001 does
not conclusively establish the amount of a claimant=s
expenses.  Furthermore, Section 18.001
does not address the issue of causation. 
Id.        

National Freight primarily contends that Snyder=s evidence of causation is deficient
because Snyder failed to segregate past medical expenses attributable to the
accident from expenses incurred for other medical conditions.  The supreme court held in Texarkana Mem=l Hosp., Inc. v. Murdock, 946
S.W.2d 836, 839-40 (Tex. 1997), that a plaintiff should only recover for
past medical expenses arising from treatment necessitated by the defendant=s negligence.  Consequently, Murdock requires a
plaintiff who is being treated for multiple conditions that are brought on by
independent causes to segregate the medical expenses attributable to each
condition. Id. at 840. 

Snyder presented a great deal of evidence
detailing the medical problems he suffered as a result of the accident.  In addition to his own testimony and the
testimony of his wife and friends, Snyder presented the testimony of three
physicians regarding the injuries that he claimed as a result of the accident
and the treatment necessitated by those injuries.  Several excerpts of Snyder=s medical records were also offered
into evidence.  Accordingly, Snyder
presented legally sufficient evidence to support an award of damages for past
medical expenses.  However, Snyder=s evidence regarding the amount of past
medical expenses attributable to the accident was deficient.  The itemized statements of medical charges
attached to Snyder=s medical
services affidavits contain charges that were not related to the accident,
including charges for treating Snyder for a heart condition.  Snyder did not offer evidence that attempted
to segregate the medical expenses attributable to the accident from the
unrelated expenses as required by Murdock.  Furthermore, Snyder=s
counsel asked the jury during closing argument to award the total amount of
expenses listed in the medical services affidavits for past medical expenses.








The failure to segregate past medical expenses
does not render an unsegregated total damage award legally insufficient.  Id. 
Instead, it entitles the defendant to a new trial so that the plaintiff
can prove what medical expenses were attributable to the defendant=s alleged negligence.  Id. 
Snyder seeks to avoid the necessity of a new trial by offering to remit
the amount of past medical expenses that are not related to the accident.  See Tex.
R. App. P. 46.5.  Absent authority
to the contrary, we conclude that a remittitur is not an appropriate remedy for
a party=s failure
to segregate past medical expenses at trial. 


National Freight also attacks the sufficiency of
the evidence supporting the jury=s
award of future medical expenses.  We
have previously addressed the matter of Snyder=s
need for neck surgery in the future in discussing the admissibility of the cost
estimates for the surgery.  National
Freight contends that the evidence of Snyder=s
need for the surgery was insufficient. 
It also asserts that the evidence of the estimates for the surgery was
insufficient to support the jury=s
award.  

The award of future medical expenses lies within
the discretion of the jury. City of San Antonio v. Vela, 762 S.W.2d 314,
321 (Tex. App.CSan
Antonio 1988, writ denied).  To sustain
an award of future medical expenses, the claimant must present evidence to
establish that, in all reasonable probability, future medical care will be
required and the reasonable cost of that care.  Machala, 995 S.W.2d at 828; Whole Foods
Mkt. Southwest, L.P. v. Tijerina, 979 S.W.2d 768, 781 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied). Although the preferred practice for establishing future medical costs
is through expert medical testimony, there is no requirement that the claimant
establish such costs through expert testimony. Tijerina, 979 S.W.2d at
781.  Because no precise evidence is
required, the jury may award such damages based upon the nature of the injury,
the medical care rendered prior to trial, and the condition of the injured
party at the time of trial. Vela, 762 S.W.2d at 321.

Dr. Kesterson evaluated Snyder for neck pain
occurring after the accident.  Snyder
underwent various forms of treatment prior to seeing Dr. Kesterson to treat the
neck pain, but none of them were successful. 
At Dr. Kesterson=s
direction, another physician performed a nerve root block on Snyder.  However, Snyder did not get any relief from
this procedure.  Dr. Kesterson testified
that Snyder had exhausted his non-surgical treatment options and that surgery
was the only remaining option for treating Snyder=s
neck pain.








National Freight contends that Dr. Kesterson was
equivocal in his testimony regarding the need for Snyder to have surgery in the
future.  However, Dr. Kesterson prefaced
his opinions on reasonable medical probability at the outset of his
testimony.  He also testified that the
surgery would be a Areasonable
thing@ for
Snyder to do.  This testimony, coupled
with the evidence of how non-surgical treatment options had failed, constituted
sufficient evidence of the need for Snyder to have surgery in the future.  Furthermore, Snyder=s
decision not to have the surgery prior to trial did not negate Dr. Kesterson=s testimony regarding the need for the
surgery.  

With respect to the costs for the future surgery,
Dr. Kesterson testified that the estimates of $23,127.60 for his fees and the
costs of $20,000 for the hospitalization sounded Aabout
right@ to him.
Snyder elicited this oral testimony from Dr. Kesterson without objection.  We have previously determined that the trial
court did not abuse its discretion in subsequently admitting documents that
contained these written estimates.  This
expert opinion evidence of the estimated costs of the future surgery is legally
and factually sufficient to support the jury=s
award of future medical expenses in the amount of $40,000.  

Issue No. 4 is sustained in part with respect to
the factual sufficiency of the evidence supporting the jury=s award of damages to Snyder for past
medical expenses.  The remaining
complaints presented in Issue No. 4 are overruled.

                                                Accrual
Date of Prejudgment Interest

In Issue No. 5, National Freight contends that the
trial court erred in determining the accrual date for prejudgment
interest.  Prejudgment interest accrues
on the amount of a judgment during a period that begins on the earlier of the
180th day after the date a defendant receives written notice of a claim against
it or the date the suit is filed. Tex.
Fin. Code Ann. '
304.104 (Vernon Supp. 2005).  The trial
court determined that a letter written by Snyder=s
attorney to National Freight=s
claims adjuster on February 3, 2000, constituted a written notice of
claim.  Accordingly, the trial court
calculated prejudgment interest from August 1, 2000, which was approximately
the 180th day after February 3, 2000. 
National Freight contends that the trial court should have used December
14, 2001, (the date suit was filed) as the accrual date.[3]








We review a trial court=s
award of prejudgment interest under an abuse of discretion standard.  See Toshiba Mach. Co., Am. v. SPM Flow
Control, Inc., 180 S.W.3d 761, 785 (Tex. App.CFort
Worth 2005, pet. granted, judgm=t
vacated w.r.m.); J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d 280,
289 (Tex. App.CSan
Antonio 2000, pet. denied).  Under this
standard, we will not disturb a trial court=s
findings on factual issues unless the court reasonably could have reached only
one decision and failed to do so.  Walker
v. Packer, 827 S.W.2d 833, 839‑40 (Tex. 1992).  However, A[a]
trial court has no >discretion= in determining what the law is or
applying the law to the facts.@
Id. at 840.  Accordingly, the
abuse of discretion standard applies to the trial court=s
factual findings as they relate to prejudgment interest; but the de novo
standard applies to the trial court=s
application of the law to the facts.  Toshiba,
180 S.W.3d at 785; Heinrich, 32 S.W.3d at 289.  As was the case in Toshiba, the trial
court=s award
of prejudgment interest at issue in this appeal hinges on the interpretation of
a single letter where the existence and contents of the letter are not in
dispute.  The question is whether the
letter constituted notice of Snyder=s
claims as a matter of law.  Therefore, as
a practical matter, our review of the prejudgment interest issue in this case
is de novo.  See Toshiba, 180
S.W.3d at 785-86. 

The text of the letter in question reads as
follows:

                                                     February
3, 2000

 

MELINDA
WOODWARD

Crawford
& Company Ins.

209
S. Danville Ste# 215

Abilene,
Texas 79605

 

Re:       Your Insured:               NATIONAL
FREIGHT INC. & STEVEN HOLDER

Claim #:                        179-89084

Claimant:                    JOHN B. SNYDER

D/A:                             01/27/00

 

Dear
Ms. Woodward:

 

Please be advised that we have been retained to
represent JOHN B. SNYDER for bodily injuries in the above referenced
incident.

 

Please reflect our representation in your files
and direct all future correspondence concerning this matter through this
office.  When our client has been
released by the treating physician, we will forward all medical specials to you
for your review.

 

If our client has given a recorded or written
statement, this is a request for a copy of any such statement.  We look forward to working with you on this
case.  (emphasis in original)








 

By its express terms, Section 304.104 requires
written notice of a claim.  A Aclaim@
is a demand for compensation or an assertion of a right to be paid.  Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998).  A claim need not demand an exact amount or
list every element of damage.  Bevers
v. Soule, 909 S.W.2d 599, 603 (Tex. App.CFort
Worth 1995, no writ).  However, a
document that merely provides notice of an accident and resulting injuries does
not constitute a claim.  Robinson v.
Brice, 894 S.W.2d 525, 528 (Tex. App.CAustin
1995, writ denied).

National Freight contends that the February 3,
2000, letter merely constitutes a letter of representation from Snyder=s counsel.  It asserts that the letter is deficient
because it does not demand compensation or assert a right to be paid.  We disagree. 
The letter begins by referencing the claims adjuster=s claim number and identifying Snyder
as a claimant.  The letter additionally
advised the claims adjuster that Snyder=s
medical bills would be forwarded to her for her review.  At a minimum, the letter constitutes an
assertion of a right to be paid.  The
letter is similar to the letter in Bevers, which the court determined to
constitute a written notice of claim.  Id.
at 603.  As noted in Bevers, the
writing need not demand an exact amount or list every element of damage.  Id. 
National Freight=s
Issue No. 5 is overruled.

                                                               This
Court=s Ruling

The trial court=s
award of damages to Snyder for past medical expenses is reversed and remanded
for trial.  The remainder of the trial
court=s
judgment is affirmed.

 

TERRY McCALL

JUSTICE

 

April 6, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











[1]Snyder also sought to offer the written estimate for
the anesthesia cost into evidence. 
Snyder withdrew the offered exhibit in response to National Freight=s objection that Dr. Kesterson lacked personal
knowledge of the anesthesia cost.





[2]As noted previously, the jury awarded Snyder $23,000
for past medical expenses.  Snyder
voluntarily agreed to remit $160.14 of the amount awarded by the jury so that
the amount of past medical expenses awarded in the trial court=s judgment complied with the total amount of expenses
listed in the medical services affidavits ($22,839.86).





[3]An accrual date of December 14, 2001, would reduce the
amount of prejudgment interest by approximately $11,000.