COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-05-00386-CR

      2-05-00387-CR

PHILLIP DEWAYNE MAYFIELD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Phillip Dewayne Mayfield appeals his convictions for indecency with a child (L.A.), aggravated sexual assault (of T.A.), and indecency with a child (T.A.).  The jury assessed punishment at two years’ confinement and recommended probation for the indecency with a child conviction involving L.A.; fifteen years’ confinement for the aggravated sexual assault involving T.A.; and ten years’ confinement with a recommendation of probation for the indecency with a child conviction involving T.A.  The trial court sentenced Mayfield accordingly.  On appeal, Mayfield raises six issues, arguing that the trial court erred by admitting four pieces of extraneous bad acts evidence, that the trial court erred by overruling his motion for mistrial, and that the cumulative effect of these errors requires reversal.  We will affirm.

II.  Factual Background

Mayfield started living with M.G.A. and her four children when M.G.A.’s oldest daughter, T.A., was in the third grade.  When T.A. turned thirteen and was in the seventh grade, Mayfield moved her clothes out of the way and rubbed her behind.  Later, Mayfield progressed to putting his fingers in T.A.’s genitals and having oral and vaginal sex with her.  Mayfield continued to have sex with T.A. until she turned sixteen and told him that it was wrong and that she wanted it to stop.  Several years later, Mayfield approached T.A.’s younger sister L.A. while she was playing a computer game and fondled her chest after he had massaged her shoulders.  Both girls eventually reported the incidents to their mother, and ultimately Mayfield was charged and convicted of the present offenses.

III.  Extraneous Bad Acts Evidence

In his first four issues, Mayfield argues that the trial court erred by admitting evidence of extraneous bad acts:  being a “Peeping Tom,” assaulting a neighbor named Debra Edwards, drinking, and having a shouting match with M.G.A.  The State responds that the “Peeping Tom” evidence was admissible to rebut testimony that Mayfield was not the type of person to commit a sexual offense involving children and to rebut a defensive theory; the State also responds that Mayfield waived any error in the admission of the other extraneous bad acts evidence by failing to object every time that the evidence was mentioned.  Because the State asserts that Mayfield may have waived some of his issues, we first review the record to determine whether Mayfield properly preserved the alleged error regarding the four extraneous bad acts before proceeding to a 403 and 404(b) analysis.

A. Preservation of Error

Outside the presence of the jury, both sides took Debra Edwards, Mayfield’s neighbor, on voir dire and questioned her about a “Peeping Tom” incident, Mayfield’s drinking, and an altercation Mayfield had with her.  Mayfield objected to the admission of Edwards’s testimony, arguing that her testimony was not relevant, was cumulative, and was barred under rules of evidence 403, 404(b), and 401.  The trial court overruled Mayfield’s objections but granted him a running objection.

To preserve error, a party must continue to object each time the objectionable evidence is offered.  
Fuentes v. State
, 991 S.W.2d 267, 273 (Tex. Crim. App.), 
cert. denied,
 528 U.S. 1026 (1999); 
Ethington v. State
, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  A trial court’s erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.  
Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); 
Johnson
 
v. State
, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1259 (1991),
 overruled on other grounds by Heitman v. State
, 815 S.W.2d 681 (Tex. Crim. App. 1991).  This rule applies whether the other evidence was introduced by the defendant or the State.  
Leday
, 983 S.W.2d at 718.

One exception to this general rule is when a defendant offers evidence identical to that which he objected to earlier to rebut, destroy, or explain the previously admitted evidence.  
Id.
 at 718-19; 
Rogers v. State
, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993).  Another exception
 is
 that a request for a running objection is timely and preserves error as long as it does not encompass too broad a subject matter during too broad a time or over different witnesses. 
 Ford v. State
, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996);
 Sattiewhite v. State
, 786 S.W.2d 271, 283 n.4 (Tex. Crim. App. 1989), 
cert. denied
, 498 U.S. 881 (1990).  A third exception is i
f a trial court hears objections to proffered evidence outside the jury’s presence and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections.  
Tex. R. Evid.
 103(a)(1); 
Geuder v. State
, 115 S.W.3d 11, 13-14 (Tex. Crim. App. 2003); 
Ethington
, 819 S.W.2d at 859.

1. Evidence Of Drinking

Edwards testified in front of the jury that Mayfield “[did] quite a bit of drinking, and he became very loud, very rude when he was drinking.  Violent.  He staggered.”  Edwards also testified that Mayfield appeared intoxicated when she spotted him being a “Peeping Tom” and when he assaulted her.  Although this testimony was covered by the running objection that the trial court granted Mayfield, prior witnesses had already testified without objection regarding Mayfield’s drinking habits.  For instance, M.G.A. testified without objection that Mayfield “used to drink a lot” and that he was crazy when he drank.  Mayfield’s counsel cross-examined M.G.A. regarding Mayfield’s drinking.  And, M.G.A. testified on redirect without objection that someone intervened to talk to Mayfield about his drinking problem.  Additionally, M.G.A.’s sister and T.A. both testified without objection about Mayfield’s drinking problem.

Because 
evidence about Mayfield’s drinking was admitted without objection before the complained-of ruling, Mayfield failed to preserve any error associated with Edwards’s testimony regarding Mayfield’s drinking problem.  
See Fuentes
, 991 S.W.2d at 273;
 
Leday
, 983 S.W.2d at 718; 
Johnson
, 803 S.W.2d at 291.  
We therefore overrule Mayfield’s third issue.

2. Evidence Of Shouting Match With M.G.A.

Edwards testified that on a couple of occasions, she had heard M.G.A. and Mayfield fighting, mainly Mayfield screaming.  Mayfield’s counsel cross-examined Edwards, confirming that she had heard Mayfield screaming at M.G.A. while he was drunk.  Although this testimony was also covered by the running objection that the trial court granted Mayfield, prior witnesses had already testified without objection regarding Mayfield’s fights with M.G.A.  Specifically, prior to Edwards’s testimony, L.A. testified during questioning by Mayfield’s counsel that she knew that her mother and Mayfield were having problems with their relationship and that she had heard their frequent arguments.  M.G.A.’s sister testified without objection that Mayfield was physical and violent with M.G.A. and that he had pushed her and hit M.G.A. in the past.  T.A. testified without objection that Mayfield was “mean” to her mom and had once tipped over a couch on which M.G.A. had been sitting.

Because 
evidence of Mayfield’s arguments and fights with M.G.A. was admitted without objection before the complained-of ruling, Mayfield failed to preserve any error associated with Edwards’s testimony regarding Mayfield’s shouting match with M.G.A.  
See Fuentes
, 991 S.W.2d at 273;
 
Leday
, 983 S.W.2d at 718; 
Johnson
, 803 S.W.2d at 291.  
We overrule Mayfield’s fourth issue.

3. Evidence Of Assaulting Edwards

Edwards also testified regarding one occasion when Mayfield swung her around, pushed her, and threatened to punch her.  
Specifically, Edwards testified that 
her oldest daughter had told her that Mayfield’s stepson was bugging her younger sister and that she had told him to leave her sister alone. Mayfield thereafter accused Edwards of hitting his stepson and of calling his stepson a derogatory term.  Edwards tried to explain that she had never touched his stepson or called him a name.  
Despite her response, Edwards testified that May
field swung her around, pushed her, and threatened to punch her.  Later, 
Mayfield took the stand and explained that he had verbally confronted Edwards about hitting his stepson but that he had never had a physical confrontation with her or any other woman.  
Mayfield’s explanation concerning this extraneous bad act is the only other testimony in the record regarding this event; therefore, Mayfield did not waive his objections to this extraneous bad act evidence.  
See 
Leday
, 983 S.W.2d at 718.
 
 The State concedes that this bad act testimony was not relevant.  We agree and accordingly hold that the trial court erred by admitting it.  
See, e.g., Russell v. State
, 113 S.W.3d 530, 541 (Tex. App.—Fort Worth 2003, pet. ref’d).

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  Because the error in admitting the evidence was nonconstitutional error, we apply rule 44.2(b) and disregard it if it did not affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole. 
 See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In the present case, Edwards’s testimony on this extraneous bad act took up less than ten pages in the 575-page record of the trial on the merits. 
 
Prior to closing arguments, the trial court read the charge to the jury, instructing them that

if there is any testimony before you in this case regarding the Defendant’s having committed bad acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other bad acts, if any were committed, and even then you may only consider the same in determining the intent of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

Thereafter, the State during its closing argument reminded the jurors that the case was not about anyone except T.A. and L.A.  The State made only one inexplicit reference to Mayfield’s encounter with Edwards, describing it as “that incident that happened but didn’t happen.”

We conclude that, in the context of the entire case against appellant, the trial court’s error in admitting the testimony in question did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
See
 
Tex. R. App. P.
 44.2(b).
  We overrule Mayfield’s second issue.

4. “Peeping Tom” Evidence

Our review of the record demonstrates that Mayfield was granted a running objection to the “Peeping Tom” evidence presented by Edwards. Edwards testified that on two occasions she caught Mayfield looking into her daughters’ bedrooms while the girls were undressing.  This evidence was not admitted through any other witness; therefore, Mayfield’s running objection regarding the “Peeping Tom” evidence preserved this alleged error.  We thus
 proceed to analyze the admission of this evidence under rules 403 and 404(b).

B. Standard Of Review For A Determination Under Rule 404(b)

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally.  
Tex. R. Evid. 
404(b); 
Nobles v. State
, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992);
 Jones v. State
, 119 S.W.3d 412, 418 (Tex. App.—Fort Worth 2003, no pet.). Consequently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense.  
Tex. R. Evid. 
404(b); 
Jones
, 119 S.W.3d at 418.  An extraneous offense, however, has noncharacter-conformity relevance where it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  
Tex. R. Evid. 401
;
 Powell v. State
, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  That is, extraneous offense evidence that tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory is relevant beyond its tendency to prove a person’s character or that he acted in conformity therewith.
  Montgomery v. State
, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh’g); 
Jones
, 119 S.W.3d at 419.  Consequently, evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.  
Tex. R. Evid. 
404(b);  
Jones
, 119 S.W.3d at 419
.  Such evidence may also be introduced to rebut a defensive theory.  
Jones
, 119 S.W.3d at 419
.

The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility.  
See Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh’g).  The trial court’s task is to determine whether extraneous offense evidence is relevant for a purpose other than to prove the propensity of the defendant to commit crimes or other bad acts.  
Jones
, 119 S.W.3d at 419
.  Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion.  
Moreno v. State
, 858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 966 (1993); 
Jones
, 119 S.W.3d at 419
.  Appellate courts should give great discretion to the trial courts in matters of relevancy, reversing only if the trial court acts outside “the zone of reasonable disagreement.”  
Montgomery
, 810 S.W.2d at 391.  Moreover,
 a trial court’s decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court’s underlying reason for the decision is wrong.  
Romero v. State
, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

C. Rule 404(b) Relevance Determination

Mayfield initially contends that the State was not justified in its proffer of the “Peeping Tom” evidence because he did not open the door by putting his character in question.  Mayfield also argues that the “Peeping Tom” evidence was not relevant to prove opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and that the “Peeping Tom” evidence 
had no relevance to any fact of consequence in this case apart from its tendency to prove conduct in conformity with character.  The State asserts that the “Peeping Tom” evidence was admissible to rebut Mayfield’s defensive theory that L.A. and T.A. fabricated the allegations against him.

At the outset, we address Mayfield’s contention that he did not open the door to the admission of extraneous offenses.  Specifically, he asserts that the State cannot rely on its own questioning of his sister—who stated during cross-examination that she did not believe that Mayfield committed the charged offenses because she knew her brother—to the open the door.

As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by defense and may not be elicited by “prompting or maneuvering” by the State.  
Wheeler v. State
, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).  However, in this case, the record reflects that Mayfield, not the State, initially presented the defense that he was the victim of a frame-up.

During opening statement, Mayfield’s counsel painted the case as an act of “desperation” in which M.G.A. was trying to get back at Mayfield because he had kicked M.G.A. and her family out of his house.  Mayfield’s counsel specifically stated that M.G.A. had influenced T.A. and L.A. “to make these things [allegations] up.”  Although it was the State that asked Mayfield why other witnesses would have lied, Mayfield’s counsel carried the frame-up defensive theory through closing argument:

Now, I know that it is hard to imagine why someone would just come up here and lie.  I know that.  But I also know it happens.  And I know it is hard for you to imagine how a mother could use her children to make awful, awful charges.  But I know that happens as well, and you can ask any judge in the country.

Thus, the record demonstrates that Mayfield propounded a defensive theory—that he was the victim of a frame-up by M.G.A.—that was subject to rebuttal evidence by the State, as long as the evidence also complied with the specific requirements of rules 404(b) and rule 403.  
See Blackwell v. State
, 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); 
see also Keen v. State
, 85 S.W.3d 405, 412-13 (Tex. App.—Tyler 2002, pet. ref’d) (showing that defensive theory was introduced during defense’s opening statement).

As noted above, to be admissible under rule 404(b), the extraneous offense evidence must have probative value beyond character conformity.  
Tex. R. Evid.
 404(b).  To be probative, the extraneous offense evidence admitted to rebut a defensive theory must be similar to the charged offense.  
See Wheeler
, 67 S.W.3d at 888-89 (holding extraneous offense similar to charged offense because in both cases defendant reached underneath young girl’s outer clothing and touched her private parts while family member was nearby); 
Plante v. State
, 692 S.W.2d 487, 492-93 (Tex. Crim. App. 1985) (holding that high degree of similarity between extraneous and charged offenses used in cases proving modus operandi not required when purpose of proof is to show intent);  
Dennis v. State
, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (holding that extraneous offense evidence admitted to rebut defensive theory of frame-up need not be signature crime or nearly identical to charged offense; rule 404(b) requires only similarity to charged offense).

At trial, the “Peeping Tom” evidence consisted of Edwards’s testimony that she caught Mayfield looking through her daughters’ bedroom windows while they were undressing.  Edwards’s oldest daughter was approximately the same age as T.A. and L.A. were when Mayfield molested them.  Thus, this “Peeping Tom” evidence was probative because it was similar to the charged offense in that it demonstrated that Mayfield displayed an inappropriate sexual interest in teenage girls, thus rebutting Mayfield’s defensive theory that he was the victim of a frame-up.

D. Standard Of Review For Trial Court’s Rule 403 Determination

Having determined that the “Peeping Tom” evidence is relevant, we next review whether the trial court abused its discretion by overruling Mayfield’s rule 403 objections.  If a trial court determines that evidence of other crimes or extraneous misconduct has relevance aside from character conformity, and a timely, proper rule 403 objection is made, the trial court must make a balancing determination under rule 403.  
Montgomery
, 810 S.W.2d at 388-89.  Rule 403 provides that “[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.”  
Tex. R. Evid. 
403.  Only “unfair” prejudice provides the basis for exclusion of relevant evidence.  
Montgomery
, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.  
Id.
  In evaluating the trial court’s determination under rule 403, a reviewing court is to reverse the trial court’s judgment “rarely and only after a clear abuse of discretion,” recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence.  
Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); 
Jones
, 119 S.W.3d at 421-22. 

The trial court’s balancing determination must be measured against the relevant criteria by which a rule 403 decision is made.  
Mozon
, 991 S.W.2d at 847.  The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense, (2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way,” (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and (4) the force of the proponent’s need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.  
Id.
 (citing 
Montgomery
, 810 S.W.2d at 389-90).  When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it.  
Jones
, 119 S.W.3d at 422 
(citing 
Montgomery
, 810 S.W.2d at 392).

E. Rule 403 Balancing Test

Mayfield argues that the “Peeping Tom” evidence was more prejudicial than probative.  Specifically,
 he argues that the “Peeping Tom” evidence was prejudicial because it painted him as a pedophile.

The first of the rule 403 balancing factors—the strength of the “Peeping
 Tom” evidence to make a fact of consequence more or less probable—weighs strongly in favor of admissibility.  The “Peeping Tom” evidence was probative of Mayfield’s intent to commit the sexual offenses against T.A. and L.A. by showing that he had a similar pattern of gratifying his sexual desires through watching Edwards’s daughters undress.  Additionally, because nothing in the record indicates that Edwards had any motive to frame Mayfield, the rebuttal testimony provided by Edwards was also probative of whether M.G.A. was framing Mayfield for the sexual offenses committed against T.A. and L.A.  
See Blackwell
, 193 S.W.3d at 15.

With regard to the second factor, it is doubtful that Edwards’s testimony impressed the jury in some irrational way.  The “Peeping Tom” evidence, which did not involve any physical touching, was not worse than the charged offenses and was not graphic.  
Therefore, the second factor weighs in favor of admissibility.

The third factor—the time that the State spent developing evidence of the extraneous bad act—was not unduly lengthy.  Edwards’s testimony on direct about the “Peeping Tom” incident took up only about twelve pages in a 575-page record.  Thus, this factor is neutral and favors neither admissibility nor exclusion of the evidence.  
See id.
 at 18.

The fourth factor—the State’s need for the extraneous bad act evidence—was significant.  Because T.A. waited for several years before she told her mother about the sexual assaults that Mayfield had perpetrated against her, there was no physical evidence of the sexual assaults.  Moreover, there were no witnesses other than the victims to the charged events.  Therefore, this factor weighs heavily in favor of admissibility.

Considering all four factors together, we conclude that the probative value of Edwards’s testimony regarding the “Peeping Tom” incidents was not substantially outweighed by its prejudicial impact.  Consequently, we hold that the trial court properly overruled Mayfield’s 403 objection and admitted the “Peeping Tom” extraneous bad act evidence to rebut Mayfield’s defensive theory that he was being framed.  
See Jones
, 119 S.W.3d at 423; 
see also Blackwell
, 193 S.W.3d at 18 (both holding that extraneous offense evidence was properly admitted to rebut appellant’s defensive theory regarding a frame-up and that evidence was admissible under rules 404(b) and 403).
  We overrule Mayfield’s first issue.

IV.  Trial Court Properly Overruled Mayfield’s Motion For Mistrial

In his fifth issue, Mayfield contends that the trial court erred by overruling his motion for mistrial due to witnesses’ and bystanders’ emotional outbursts during trial testimony.  Specifically, Mayfield argues that the emotional outbursts of L.A., T.A., and the “wailing bystander” were so outrageous that Mayfield did not receive a fair trial.  The State responds that Mayfield failed to preserve error, if any, regarding the emotional outbursts by failing to make a complaint at the time of the conduct.

Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion.  
Tex. R. App. P.
 33.1; 
Griggs v. State
, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  In accordance with rule 33.1, a motion for mistrial must be both timely and specific.  
Griggs
, 213 S.W.3d at 927.  (citing 
Young v. State
, 137 S.W.3d 65, 65-66 (Tex. Crim. App. 2004)).  A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.  
Id.
 (citing 
Wilkerson v. State
, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994)). 

The record reflects that both L.A. and T.A. were very emotional before and during their testimony, crying through most of the questioning.  Right after L.A. took the stand and told the jury her name and where she went to school, the trial court asked the jury to retire to the jury room, presumably because she was crying.  Likewise, T.A. was crying as she entered the courtroom before her testimony commenced and continued crying throughout her time on the witness stand.

The following day, Mayfield presented his motion for mistrial.  One of Mayfield’s attorneys testified regarding the events of the previous day involving L.A.’s and T.A.’s uncontrolled crying; however, there is no mention in Mayfield’s attorney’s testimony, nor in his brief, describing the “wailing bystander.”  One of the State’s prosecutors also took the stand and gave his account of the events from the previous day.  After hearing testimony from the attorneys representing both sides, the trial court denied Mayfield’s motion for mistrial.

The trial court then asked T.A. whether she wished to continue testifying, and T.A. said that she did and that she was in better control of her emotions.  The trial court brought in the jury and instructed them,

Ladies and gentlemen, if you will recall at the conclusion of jury selection on Tuesday, before we started any testimony, I gave you an instruction at that time, and I want to reinstruct you again, that as jurors[,] you must not be influenced in any degree by any personal feeling of sympathy for or prejudice against the State or the Defendant in this case, for each is entitled to the same fair and impartial consideration, okay?  With that, we are ready to proceed. 

Thus, the trial court essentially instructed the jury to disregard any sympathy they felt for L.A. or T.A. because of the emotion they displayed.  Therefore, the trial court properly instructed the jury to disregard, thereby curing any harm.  
See Bauder v. State
, 921 S.W.2d 696, 700 (Tex. Crim. App. 1996) (stating that curative instructions are presumed effective to withdraw from jury consideration almost any evidence or argument that is objectionable), 
overruled on other grounds by Ex Parte Lewis
, No. PD-0577-05, 2007 WL 57823 (Tex. Crim. App. Jan. 10, 2007).  Because any harm was cured by the trial court’s instruction to disregard, we need not address whether Mayfield timely brought his motion for mistrial.  
See
 
Tex. R. App. P.
 47.1.  We overrule Mayfield’s fifth issue.

V.  Reversal Not Required

In his sixth issue, Mayfield argues that the cumulative effect of the alleged errors in issues one through five requires reversal.  Because we have held that there was no harmful error regarding the admission of extraneous bad acts evidence and the overruling of Mayfield’s motion for mistrial, there is no error to accumulate.  
See Reyna v. State
, No. 02-05-00285-CR, 2006 WL 2578267, at *4 (Tex. App.—Fort Worth Sept. 7, 2006, no pet.) (mem. op.) (not designated for publication) (holding that because there was no error regarding voir dire or the failure to file a motion to suppress, there was no error to accumulate); 
see also Univ. of Tex. at Austin v. Hinton
, 822 S.W.2d 197, 205 (Tex. App.—Austin 1991, no writ) (finding no error in the trial, appellate court overruled cumulative error issue).  We therefore overrule Mayfield’s sixth issue.

VI.  Conclusion

Having overruled Mayfield’s six issues, we affirm the trial court’s judgments.

SUE WALKER

JUSTICE

PANEL A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 29, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.