ACCEPTED
03-15-00083-CV
7526153
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 6:01:49 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00083-CV
_____

## In the Court of Appeals
## Third District of Texas
## Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 6:01:49 PM
JEFFREY D. KYLE
Clerk

_____

CRAIG A. WASHINGTON,

APPELLANT

V.

COMMISSION FOR LAWYER DISCIPLINE,

APPELLEE

_____

*Appealed from the 335th District Court*
*Of Bastrop County, Texas*
*Honorable George Gallagher, Judge Presiding*

_____

**BRIEF OF APPELLEE**
**COMMISSION FOR LAWYER DISCIPLINE**
*(ORAL ARGUMENT REQUESTED)*

_____

LINDA A. ACEVEDO
CHIEF DISCIPLINARY COUNSEL

LAURA BAYOUTH POPPS
DEPUTY COUNSEL FOR ADMINISTRATION

CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL

OFFICE OF THE CHIEF DISCIPLINARY
COUNSEL
STATE BAR OF TEXAS
P.O. BOX 12487
AUSTIN, TEXAS 78711-2487
512.427.1350; 1.877.953.5535
FAX: 512.427.4167

NAMES OF PARTIES AND COUNSEL

APPELLANT

CRAIG A. WASHINGTON

COUNSEL FOR APPELLANT

MICHAEL A. STAFFORD
KATHARINE D. DAVID
STACY R. OBENHAUS
JOHN MACVANE

GARDERE WYNNE SEWELL LLP
2000 Wells Fargo Plaza
1000 Louisiana Street
Houston, Texas 77002
Telephone: 713.276.5500
Fax: 713.276.5555

APPELLEE

COMMISSION FOR LAWYER DISCIPLINE
STATE BAR OF TEXAS
P.O. Box 12487
Austin, Texas 78711

COUNSEL FOR APPELLEE

LINDA A. ACEVEDO
Chief Disciplinary Counsel

LAURA BAYOUTH POPPS
Deputy Counsel for Administration

CYNTHIA CANFIELD HAMILTON
Senior Appellate Counsel
STATE BAR CARD NO. 00790419
Email: cynthia.hamilton@texasbar.com

1

State Bar of Texas
P.O. Box 12487
Austin, Texas 78711-2487
512.427.1350; 1.877.953.5535
Fax: 512.427.4167

TABLE OF CONTENTS

PAGE

NAMES OF PARTIES AND COUNSEL................................................................1

INDEX OF AUTHORITIES...............................................................................5

STATEMENT OF THE CASE ...........................................................................10

STATEMENT OF THE ISSUES .........................................................................11

STATEMENT OF FACTS.................................................................................12

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT AND AUTHORITIES ...................................................................16

I.      Character evidence could not have overcome Washington's failure to refute the compelling evidence of his misconduct, so the trial court did not harmfully err by excluding his character witnesses ................................16

        A.      The Commission presented compelling, unrefuted evidence of Washington's violation of Rule 8.04(a)(3) ........................................17

        B.      Washington could not overcome the Commission's compelling evidence of his misconduct simply by offering evidence regarding his reputation in the community .........................................23

        C.      TRE 608(a) is not relevant to this appeal because Washington did not rely on it in the trial court and because the Commission did not launch the type of character attack that opens the door to the admission of character evidence under 608(a).............................26

II.     Washington was not entitled to a new trial based on the jury's receipt of unadmitted evidence because he cannot show that the jury's verdict probably resulted directly from the unadmitted evidence .............................28

III.    Washington's complaints regarding the jury charge are without merit because the charge properly tracked the language of the disciplinary rules and Washington failed to preserve his charge complaints ...................31

IV.     The "cumulative error" doctrine is irrelevant because the jury's verdict is based on compelling evidence of Washington's misconduct rather than on error by the trial court.................................................33

V.      The trial court did not abuse its broad sanctions discretion .........................34

    A.     It is well settled that the trial court, not the jury, determines the appropriate sanction(s) for attorney misconduct................................34

    B.     The sanctions in this case are not excessive in light of the seriousness of Washington's misconduct and the egregious harm to his clients.............................................................................37

PRAYER.........................................................................................................39

CERTIFICATES OF COMPLIANCE AND SERVICE ...........................................40

APPENDIX......................................................................................................42

INDEX OF AUTHORITIES

CASES                                                                                          PAGE

*Bellino v. Commission for Lawyer Discipline*,
    124 S.W.3d 380 (Tex.App.—Dallas 2003, pet denied) ...............................31

*Cire v. Cummings*,
    134 S.W.3d 835 (Tex. 2004) ...................................................................37

*Collins v. Beste*,
    840 S.W.2d 788 (Tex.App.—Fort Worth 1992, writ denied) .......................32

*Continental Cas. Co. v. Davilla*,
    139 S.W.3d 374 (Tex.App.—Fort Worth 2004, pet. denied)........................37

*Country Village Homes, Inc. v. Patterson*, 236 S.W.3d 413 (Tex.App.
    —Houston [1st Dist.] 2007, pet. granted, judgm't vacated w.r.m.)...............29

*Davis v. Tex. Dep't of Family and Protective Services*,
    2012 WL 512674 (Tex.App.—Austin 2012, no pet.) (mem. op.)................17

*Dudley v. Humana Hospital Corp.*,
    817 S.W.2d 124 (Tex.App.—Houston [14th Dist.] 1991, no writ)...............16

*Estate of Finney*,
    424 S.W.3d 608 (Tex.App.—Dallas 2013, no pet.) ...................................16

*Hanners v. State Bar of Tex.*,
    860 S.W.2d 903 (Tex.App.—Dallas 1993, writ dism'd) .............................36

*In re Caballero*,
    441 S.W.3d 562 (Tex.App.—El Paso 2013, orig. proceeding)....................35

*Jaster v. Comet II Constr.*,
    438 S.W.3d 556, 562-63 (Tex. 2014)........................................................35

*McIntyre v. Comm'n for Lawyer Discipline*,
    247 S.W.3d 434 (Tex.App.—Dallas 2008, pet. denied) ........................31, 33

*Michael v. State*,
235 S.W.3d 723 (Tex. Crim. App. 2007) ......................................................26

*Mid-South Bottling Co. v. Cigainero*,
799 S.W.2d 385 (Tex.App.—Texarkana 1990, writ denied) ........................29

*Olsen v. Comm'n for Lawyer Discipline*,
347 S.W.3d 876 (Tex.App.—Dallas 2011, pet. denied) ..........................37, 38

*Owens-Corning Fiberglass Corp. v. Malone*,
972 S.W.2d 35 (Tex. 1998) ...........................................................................16

*Rhey v. Redic*,
408 S.W.3d 440 (Tex.App.—El Paso 2013, no pet.) .....................................34

*Sears, Roebuck & Co. v. Abell*,
157 S.W.3d 886 (Tex.App.—El Paso 2005, pet. denied)..............................32

*State Bar of Tex. v. Kilpatrick*,
874 S.W.2d 656 (Tex. 1994) .............................................................34, 37, 38

*State v. O'Dowd*,
312 S.W.2d 217 (Tex. 1958) ................................................................. 34-35

*Tex. Dep't of Transp. v. Able*,
35 S.W.3d 608 (Tex. 2000) ......................................................................16, 17

*University of Tex. at Austin v. Hinton*,
822 S.W.2d 197 (Tex.App.—Austin 1991, no writ) .....................................33

S<small>TATUTES AND</small> R<small>ULES</small>                                                                                    P<small>AGE</small>

T<small>EX</small>. D<small>ISCIPLINARY</small> R<small>ULES</small> P<small>ROF'L</small> C<small>ONDUCT</small> R. 1.01(b)(1) ....................................32
T<small>EX</small>. D<small>ISCIPLINARY</small> R<small>ULES</small> P<small>ROF'L</small> C<small>ONDUCT</small> R. 1.01(c) .......................................32
T<small>EX</small>. D<small>ISCIPLINARY</small> R<small>ULES</small> P<small>ROF'L</small> C<small>ONDUCT</small> R. 1.03(a) .......................................32
T<small>EX</small>. D<small>ISCIPLINARY</small> R<small>ULES</small> P<small>ROF'L</small> C<small>ONDUCT</small> R. 1.15(d) .......................................32
T<small>EX</small>. D<small>ISCIPLINARY</small> R<small>ULES</small> P<small>ROF'L</small> C<small>ONDUCT</small> R. 8.04(a)(3)....................................32

T<small>EX</small>. G<small>OV'T</small> C<small>ODE</small> A<small>NN</small>. § 81.077(a) (West 2015)....................................................35

T<small>EX</small>. R. A<small>PP</small>. P. 44.1(a) .....................................................................................16, 29

T<small>EX</small>. R. C<small>IV</small>. P. 272.........................................................................................32
T<small>EX</small>. R. C<small>IV</small>. P. 278.........................................................................................32

T<small>EX</small>. R<small>ULES</small> D<small>ISCIPLINARY</small> P. R. 3.09 ................................................................35, 36
T<small>EX</small>. R<small>ULES</small> D<small>ISCIPLINARY</small> P. R. 3.10 ....................................................................37

S<small>ECONDARY</small> M<small>ATERIALS</small>                                                                           P<small>AGE</small>

B<small>LACK'S</small> L<small>AW</small> D<small>ICTIONARY</small> 8 (6th ed. 1990) ...........................................................35

*Merriam-Webster Online Dictionary*,
http://merriam-webster.com/dictionary/abrogate (last visited Oct. 22, 2015) ........36

_____

# In the Court of Appeals
# Third District of Texas
# Austin, Texas

_____

CRAIG A. WASHINGTON,

APPELLANT

V.

COMMISSION FOR LAWYER DISCIPLINE,

APPELLEE

_____

*Appealed from the 335th District Court*
*Of Bastrop County, Texas*
*Honorable George Gallagher, Judge Presiding*

_____

**BRIEF OF APPELLEE**
**COMMISSION FOR LAWYER DISCIPLINE**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellee, the Commission for Lawyer Discipline, submits this brief in response to the brief filed by Appellant, Craig A. Washington. For clarity, this brief refers to Appellant as "Washington" and Appellee as "the Commission." It designates record references as CR (clerk's record), RR (reporter's record), Pet. Ex. (Petitioner's exhibit to reporter's record) and App. (appendix). References to rules refer to the Texas Disciplinary Rules of Professional Conduct unless

otherwise noted.[1]  References to Appellant's brief are designated "Appellant's Br."

followed by the page number.

---

[1] *Reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A (West 2007).

*Type of Proceeding*:      Attorney Discipline

*Petitioner/Appellee*:      The Commission for Lawyer Discipline

*Respondent/Appellant*:   Craig A. Washington

*Trial Judge*:      The Honorable George Gallagher (sitting by assignment pursuant to Rule 3.02 of the Texas Rules of Disciplinary Procedure)

*Judgment*:      Judgment of Partially Probated Suspension

*Violations found*:      **Rule 1.01(b)(1):**  In representing a client, a lawyer shall not neglect a legal matter entrusted to the lawyer.

**Rule 1.03(a):**   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**Rule 1.15(d):**   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.

**Rule 8.04(a)(3):**  A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

# STATEMENT OF THE ISSUES

Whether the exclusion of character evidence is harmless in a case where the record shows that the verdict did not turn on the excluded evidence?

Whether the presence in the jury room of unadmitted evidence is harmless if it is clear that the jury verdict did not result directly from the unadmitted evidence?

Whether an appellant who failed to take the steps necessary to preserve charge error is foreclosed from complaining on appeal about alleged error in a jury charge?

Whether a district court determines the appropriate sanctions for attorney misconduct following a jury trial in a disciplinary action?

Whether a reviewing court should affirm disciplinary sanctions that are well supported by the evidence of record?

On September 21, 2006, Washington filed a lawsuit on behalf of Michael Gobert and N'Dia Henry (Pet. Ex. 5). The lawsuit essentially sought to recover the clients' deceased mother's home (Pet. Ex 5). The trial court set the lawsuit for trial on October 5, 2009, and provided the parties with a docket control order regarding the trial date and associated deadlines on May 12, 2009 (Pet. Ex. 9).

Washington did not appear for the pretrial hearing on October 2, 2009, or the trial on October 5, 2009 (Pet. Ex. 10, 17). He also did not seek a continuance of the trial date in advance (Pet. Ex. 10, 17). As a result, the trial court dismissed the lawsuit for want of prosecution (Pet. Ex. 10, 17). Washington sought to have the suit reinstated, but the court denied his motion to reinstate (Pet. Ex. 11, 12, 17).

The Eighth Court of Appeals affirmed the dismissal of the lawsuit (Pet. Ex. 17). In its opinion, the Court explained that the history of the case warranted dismissal for want of prosecution because (1) the suit had been on file for more than three years at the time it was scheduled to go to trial; (2) there was no dispute that Washington received notice of the trial setting and the pretrial hearing; (3) the docket control order notified Washington that his failure to attend may result in dismissal; (4) Washington failed to file any pretrial motions within the established deadlines and failed to provide witness and deposition lists, proposed jury

questions, or a list of exhibits as required by the docket control order; and (5) Washington provided no explanation for his omissions (Pet. Ex. 17).

The Eighth Court of Appeals affirmed the dismissal on October 6, 2010 (Pet. Ex. 17). However, Washington's clients did not learn of the dismissal until October 30, 2012, because he failed to inform them of the dismissal (3 RR 32:24 – 35:9, 45:22-25; 4 RR 149:7 – 151:17). In fact, as late as June 26, 2012, Washington misrepresented the status of the lawsuit, leading his clients to believe that it was still viable on that date (3 RR 32:24 – 35:9, 45:22-25). He also failed to provide them with copies of their file upon request (3 RR 43:15-24; 4 RR 143:22 – 144:4).

The Commission alleged that Washington's conduct violated Rules 1.01(b)(1), 1.03(a), 1.15(d), and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct (CR 112-15). After a jury trial and a verdict in the Commission's favor, the Honorable George Gallagher entered judgment for the Commission and imposed sanctions against Washington, including a four-year partially probated suspension of his law license (1 Supp. CR 4-11). Following a hearing on Washington's motion for new trial, Judge Gallagher modified the original judgment, primarily by reducing the length of the active portion of the suspension (CR 319-23).

In this appeal, Washington does not attempt to argue that the evidence is insufficient to support the judgment. Instead, he picks apart the transcript from his jury trial and identifies procedural issues that, he claims, constitute reversible error. But none of the issues provides a basis for reversal. Nor is there "cumulative error."

Much of Washington's brief focuses on the trial court's exclusion of his character witnesses during the jury phase of the trial. The court admitted character evidence during the sanctions phase but sustained the Commission's objection to its admission in the proceedings before the jury. And though Washington insistently urges this Court to reverse the judgment due to the exclusion, it provides no basis for reversal. Assuming for the sake of argument that the decision to exclude character testimony was erroneous, the error was clearly harmless because this case did not turn on character evidence. The Commission presented compelling, unrefuted evidence of Washington's misconduct, and he could not overcome that evidence by putting on testimony regarding his reputation in the community.

Similarly, this case did not turn on an exhibit that erroneously found its way to the jury room. The exhibit included information regarding a brief administrative suspension of Washington's law license in 1996 due to non-payment of the

14

attorney occupation tax and/or related penalties or interest. In light of the compelling evidence of Washington's misconduct, it would be unreasonable to conclude that the jury's verdict probably resulted directly from the presence of the exhibit in the jury room. Thus, it cannot provide a basis for reversal.

Washington also complains about the jury charge, but he did not take the steps necessary to preserve any error in the charge. Not only did he fail to make objections on the record to the court's charge, he also failed to submit written instructions in substantially correct form. And most importantly, the jury charge properly tracked the language of the disciplinary rules.

Washington's arguments regarding sanctions also have no merit. It is well established that the trial court, not the jury, determines sanctions in a disciplinary action. In this case, the trial court's sanctions find ample support in the record. Washington's egregious misconduct and the severe consequences to his clients justified the court's decision to impose a one-year active suspension followed by three years of probation. His numerous prior disciplinary sanctions also support the sanctions decision.

All in all, the judgment is well supported by the evidence, and Washington has not shown reversible error. Therefore, this Court should affirm the judgment in all respects.

**I.    Character evidence could not have overcome Washington's failure to refute the compelling evidence of his misconduct, so the trial court did not harmfully err by excluding his character witnesses.**

Washington first argues that the trial court harmfully abused its discretion by refusing to admit character evidence that he offered.  He argues that the evidence should have been admitted under Rules 404(a)(1)(B) and 608(a) of the Texas Rules of Evidence.

A trial court has broad discretion to make evidentiary rulings, and an evidentiary ruling must be upheld if there is any legitimate basis for it.  *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).  Before reversing a judgment based on the exclusion of evidence, an appellate court must determine that the exclusion was erroneous and that it probably caused the rendition of an improper judgment.  TEX. R. APP. P. 44.1(a); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).  "Reversible error does not usually occur in connection with evidentiary rulings unless the appellant demonstrates the whole case turned on the particular evidence excluded or admitted."  *Estate of Finney*, 424 S.W.3d 608, 612-13 (Tex.App.—Dallas 2013, no pet.) (citing *Dudley v. Humana Hospital Corp.*, 817 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1991, no writ)).  Erroneous "'exclusion is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely

16

made no difference.'" *Davis v. Tex. Dep't of Family and Protective Services*, 2012 WL 512674 (Tex.App.—Austin 2012, no pet.) (mem. op.) (citation omitted). To determine harm, the appellate court reviews the entire record. *Able*, 35 S.W.3d at 617.

## A. The Commission presented compelling, unrefuted evidence of Washington's violation of Rule 8.04(a)(3).

In this case, Washington argues that he offered character testimony in response to the Commission's allegation that he violated Rule 8.04(a)(3), which prohibits conduct involving dishonesty, deceit, or misrepresentation.[2] The Commission alleged that Washington violated the rule by leading his clients to believe that their case was still pending long after it had been dismissed for want of prosecution.

As part of its case in chief on the allegation that Washington engaged in conduct involving dishonesty, deceit, or misrepresentation, the Commission offered testimony from Sherry Carter and Michael Gobert, who were Washington's clients (3 RR 21-100; 4 RR 139-212). Ms. Carter and Mr. Gobert presented compelling testimony regarding Washington's failure to tell them the truth about the status of their lawsuit after its dismissal in 2009 for want of prosecution:

---

[2] The live disciplinary petition quoted the entirety of Rule 8.04(a)(3), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation (CR 114). But at trial, the Commission pursued a claim that Washington's conduct involved dishonesty, deceit, or misrepresentation (not fraud). As a result, "fraud" was not submitted to the jury (CR 144).

**Carter testimony (3 RR 32- 35):**

Q:      When did you first discover that the house might be for sale?

A:      Oh, Lord.  I – I had been glancing on the internet one day at work, and I think I had put the address in or something.  I noticed something flashed that there was a picture of the house and it was for sale.  But I was real busy at work, so I didn't pay attention to it that much.  I just made a mental note that I'll discuss it with Mr. Washington when I see him.

And so I went over to his office on June 26th, and we visited and talked.  And I mentioned to him that I thought I had seen a listing for the house on the internet, on a website.  And I asked him had –

Q:      Let me ask you just a minute.  June 26th, what year was that?

A:      2012.

Q:      2012?

A:      Uh-huh.

Q:      Go ahead.

A:      I  mentioned – I asked him if he knew where Craig Bush was paying the taxes on the house, and what would happen if the house caught on fire, were we sure it was protected.  And he let me know that his staff was taking care of everything, was on top of everything.  And that's what I left the office believing.

But when I returned to work, I checked on the internet again.  I checked the Montgomery County real estate website, and I noticed the house had been sold in March.  So I was so shocked, I called his office and let them know what I had just found out.  And I called my husband and asked him to return to my office and pick me up, I needed to go back to Craig Washington's office and show him what I had discovered.

And so we drove back over there, and I rung the doorbell, and Mr. Washington came to the door.  And I showed him the copy of the sale of the property.  And, of course, he told me – well, he – he looked real shocked.

18

And he told me that anything can happen.  And, I mean, he couldn't say that couldn't happen, but he wasn't supposed to be able to sell the house if there was some type of hold on it or whatever.

And then he promised me that he would get in touch with another real estate person that would help him with that and he'd get back in touch with me.

Q:	When you say there was some type of hold on the house, did he tell you there was a lis pendens on it?

A:	Yes.  Yes.

Q:	So did you understand what that was?

A:	Yes.  I understood – my understanding was that it couldn't be sold because it was in litigation.  And I believed that up to that point.

Q:	So this was in 2012?

A:	Yes.

Q:	And what did he say when you confronted him with the fact that the house had been sold?

A:	Well, he said, well, anything could happen, but he was going to get in touch with this other acquaintance that was real knowledgeable in real estate and he'd get back in touch with me.

Q:	Did he ever get back in touch with you?

A:	No.

Q:	And that was in June of 2012?

A:	Yes.

Contrary to what Washington led Ms. Carter to believe on June 26, 2012, the lawsuit was over.  It had been dismissed on October 14, 2009 (Pet. Ex. 10);

19

Washington's motion to reinstate had been denied on November 9, 2009 (Pet. Ex. 12); and his appeal had ended on October 6, 2010, with an affirmance of the dismissal (Pet. Ex. 17).

Nevertheless, Washington led his clients to believe that their case was not over. Mr. Gobert explained that they finally learned the truth long after the dismissal of their lawsuit was final when, through an internet search, he found the court of appeals' decision affirming the dismissal:

**Gobert testimony (4 RR 149-50):**

Q:  What is [Petitioner's Exhibit 7]?

A:  Looks like an appeal paper.

Q:  Okay. What's the date at the bottom of that?

A:  October 30th, 2012.

Q:  Okay.

A:  I think this is – looks like the paper that I found, what I looked up on the internet in the Court of Appeals.

Q:  Okay.

A:  Yeah. (Reading to himself.) Yeah, this.

Q:  Okay. Is that the first time that – did you print this out at the time that you looked it up?

A:  Yes. This is when I found out, around this time.

Q:  Okay.

20

A:     2012.

Q:     So this is a copy of the one you printed out?

A:     Yes.  And showed my grandmother, yes.

Q:     Okay.  And what did you find out when you read this?

A:     What did I find out?

Q:     Uh-huh.

A:     That he did nothing for me or on my case or didn't show up.  Pretrial. He didn't even send a representative.  He didn't do nothing, $10,000 he didn't do nothing.  That's really what this says.

Q:     Is this the first time you found out that the case – did Mr. Washington ever tell you the case had been dismissed?

A:     Never.  I was under the pretense that I still had a case.  I was waiting. I mean, no.

That Washington's clients learned of the final disposition of their case as the result of an internet search on October 30, 2012, is telling.  The court of appeals had affirmed the dismissal of their lawsuit more than two years earlier on October 6, 2010 (Pet. Ex. 7).  Nonetheless, on June 26, 2012, Washington had led them to believe that he was still working on the case and it could be salvaged (3 RR 32:24 – 35:11).  It was not until Mr. Gobert confronted him with the information he found on the internet that Washington finally admitted the case was lost (4 RR 150:8 – 151:17).

21

Washington offered little to refute the testimony from Ms. Carter and Mr. Gobert regarding his misrepresentation of the status of the lawsuit. Washington testified after Ms. Carter. Thus, at the time he testified, Ms. Carter's testimony regarding their conversation of June 26, 2012, was on the record, as was her testimony that she and Mr. Gobert found out about the final disposition of the lawsuit as a result of Mr. Gobert's internet research (3 RR 35:12 – 40:14, 45:21-25). Nonetheless, Washington never denied Ms. Carter's description of their June 26th conversation or directly addressed her assertion that he led her to believe the lawsuit was still alive. In response to his attorney's question whether he ever told her that "there were no problems with the case, everything was going smoothly, even though the case had been dismissed and you appealed it," Washington was evasive:

> A:　　There were problems with this case from the beginning. From day one there were – and I told her what the problems were.
>
> Q:　　In fact, you would receive calls from not just Ms. Carter and Mr. Gobert and Mr. Black and the attorneys but from the entire greater family would call regularly to find out, when are we going to get our money?
>
> A:　　Everybody was looking for money. And some of them didn't have an interest, wasn't going to get a dime anyway, but they would still call. And I would talk to them because I'm trying to keep the peace.
>
> 　　Like Mr. Black and Ms. Randle didn't need to be fighting. They need to be on the same side. You don't need to have Mr. Black mad at her about grandparent's rights. They need to be – those two children are named in the thing. They need to be cooperating towards the greater good, which was to try to get the property back, not fighting each other over a storage locker full

22

of furniture and things that were emotionally important, but they had nothing to do with a $400,000 house. They needed to be on the same side, on the same team, and I did my best to juggle them. . . .

(4 RR 133:6 – 134:6)

Washington's focus on supposed difficulties with the family ignored the real problems with the lawsuit – his failure to take the steps necessary for the suit to have any chance at success and his failure to keep his clients informed so that they could make decisions about how to proceed. He also ignored the compelling testimony demonstrating that he misrepresented the status of the lawsuit.

**B. Washington could not overcome the Commission's compelling evidence of his misconduct simply by offering evidence regarding his reputation in the community.**

Based on the damning testimony against him and the absence of any direct response from Washington, the evidence left room for only one conclusion – that Washington led his clients to believe that the lawsuit was still alive long after its disposition was final. The case was not a he-said-she-said as Washington argues. It was a case of convincing testimony on one side with no real rebuttal on the other. Washington could not overcome unrefuted direct evidence of his misconduct merely by offering evidence of his reputation. Although he is correct that this was essentially a three-witness trial (Appellant's Br. 28), his assertion overlooks the fact that the Commission called all three witnesses. He did not put

23

on the testimony of a single witness other than very brief, limited testimony by Sonya Heath.[3]

Despite the one-sided nature of the evidence regarding Washington's misrepresentation of the status of the lawsuit, he argues that the admission of his character evidence probably would have resulted in a different judgment. His argument cannot succeed because character evidence alone could not overcome the evidence supporting the jury's finding that he engaged in conduct involving dishonesty, deceit, or misrepresentation. No matter how much character evidence the trial court admitted, the record would still be entirely devoid of evidence to refute Ms. Randle's and Mr. Gobert's testimony. Thus, there would still be the legal equivalent of no evidence in his favor on this issue.

In addition, the nature of the character evidence offered by Washington was unremarkable. Based on the record, the evidence would not have been "particularly strong" as Washington claims. Appellant's Br. 27. It consisted of testimony from a lawyer who had been licensed to practice law for five years (4 RR 218) and had known Washington for 5-7 years (4 RR 223). Four years prior to

---

[3] Notably, Ms. Heath both worked in Washington's law office at the time of the representation in question and served as co-counsel with Washington on the appeal of the dismissal of his clients' lawsuit (Pet. Ex. 15; Pet. Ex. 18 (Ex. F)). In fact, Ms. Heath was the person who notified the court that Washington would not be present for trial because of his conflicting setting (Pet. Ex. 18 (Ex. F)). Thus, it is noteworthy that she did not offer more extensive testimony regarding the facts at issue, especially the disputed facts regarding notification of the court.

her testimony (4 RR 226), she had worked for Washington for "a couple" of those years (4 RR 224). She testified that she knows hundreds of lawyers and "all" of them have good things to say about Washington (4 RR 225). She also testified that "most everybody" she knows thinks highly of his integrity, honesty, and veracity (4 RR 225). And she testified that she had little personal knowledge of Washington's dealings with the clients at issue in this disciplinary action (4 RR 226-27).[4]

The exclusion of Washington's character evidence, even if erroneous, was not harmful. The rest of the evidence regarding Washington's dishonesty was so one-sided that any error likely made no difference. He argues that if his character evidence had been presented to the jury, they "almost certainly would have credited [his] testimony over that of the complaining witnesses." Appellant's Br. 36. But his assertion overlooks that there was no meaningful testimony for the jury to credit in his favor. He never directly refuted the strong evidence of his misconduct. Thus, assuming for the sake of argument that the trial court erred by excluding his character evidence evidence, the exclusion cannot provide a basis for reversal.

---

[4] Upon making his offer of proof regarding the excluded character testimony, Washington's attorney represented to the trial court that his other character witnesses would provide substantially similar testimony (4 RR 228:14-19). Thus, Washington cannot now argue that the testimony would have been different from Ms. Heath's testimony. Importantly, at that time he did not offer testimony from witnesses like a United States Congresswoman or a Texas State Senator as his brief implies.

**C. TRE 608(a) is not relevant to this appeal because Washington did not rely on it in the trial court and because the Commission did not launch the type of character attack that opens the door to the admission of character evidence under 608(a).**

As for his argument regarding TRE 608(a), Washington never made this argument to the trial court. Thus, he did not preserve it for appeal. In his brief, he claims that he preserved the issue at 4 RR 216: 22-25. However, his attorney's statements at that point in the record do not refer to TRE 608(a) or otherwise indicate that he was offering character testimony under TRE 608(a).

Moreover, TRE 608(a) provides for a witness to be rehabilitated through character evidence as to the witness's truthfulness only if the witness's general character for truthfulness is attacked. *Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007). The question is whether the overall tone and tenor of the examination of the witness imply that he is a liar. *Id.* If the examination merely questions information provided by the witness rather than the witness's character, exclusion is proper because the door is not open to character evidence under TRE 608(a). *Id.*

The Commission's questions did not attack Washington's general character for truthfulness. Their point was merely to highlight conflicts between his testimony and documentary evidence in order to persuade the jury to rely on the more objectively reliable of the two. This is the quintessential point of a trial. Each party attempts to put on evidence that conflicts with or calls into question the

26

other party's position. That is how each side proves its case. Each attempts to show that the other's version of events is inaccurate. And because the Commission's questions were aimed at the accuracy of information provided to Washington by another person (his staff member who supposedly notified the court of his conflicting trial settings before the scheduled trial date), characterizing them as an attack on his general character for truthfulness would be particularly misplaced. The Commission's questions were nothing more than unremarkable attempts to present its evidence to the jury.[5]

In addition, the record excerpts that Washington describes as character attacks were aimed at proving that he neglected his clients' case by failing to take the steps he should have taken in pursuit of their lawsuit. *See* Appellant's Br. 25-26. Thus, they were a necessary part of the Commission's proof. They were not superfluous to the elements the Commission had to prove in order to succeed at trial. As such, any incidental reflection on the truth of Washington's assertions was an unavoidable consequence of the Commission's efforts to put on its case.[6]

---

[5] For example, the Commission's questioning the positions that Washington took to defend himself and, in the process, stating that he "claimed" or "alleged" that his criminal case had precedence cannot fairly be described as a character attack (4 RR 46:22 – 47:2).

[6] Washington complains about the Commission's use of his deposition to contradict his testimony as an example of how the Commission opened the door to character evidence under TRE 608(a). Appellant's Br. 25. But Washington likewise used Mr. Gobert's deposition to contradict *his* testimony (4 RR 177:3 – 178:17, 185:2 – 186:5), and the Commission obviously could not have offered testimony regarding Mr. Gobert's character for truthfulness under TRE 608(a). Clearly, then, the mere use of a witness's inconsistent deposition testimony does not open the door to character evidence.

27

In short, it was the evidence of record regarding Washington's actions, not the absence of character evidence, that proved Washington's misconduct. The substantive evidence was so one-sided that it did not leave room for doubt about whether he fulfilled his obligations to his clients. Character evidence simply could not have overcome the direct evidence of misconduct or provided a legitimate basis for a different verdict.

The character evidence that Washington wished to offer was ultimately presented in its proper context – at the sanctions hearing. But even as impressive as the evidence was, it could not overcome the severe hardship that Washington's clients experienced as a result of his egregious misconduct. His actions directly resulted in the loss of their cause of action and caused them to suffer serious financial and emotional consequences.

## II. Washington was not entitled to a new trial based on the jury's receipt of unadmitted evidence because he cannot show that the jury's verdict probably resulted directly from the unadmitted evidence.

Washington next complains about unadmitted evidence that was inadvertently taken into the jury room. The evidence in question is a copy of a membership record showing that Washington's law license was briefly suspended in 1996 "for non-payment of the Texas Attorney Occupation Tax and/or associated penalties or interest" (Pet. Ex. 1). Although the Commission initially offered the exhibit, Washington objected and the Commission agreed that submission to the

jury was unnecessary, whereupon the trial court admitted the exhibit for purposes of the record only (3 RR 20:3-23). Apparently neither party took steps to ensure that the exhibit was removed from the papers taken to the jury room.

Washington first raised this issue in his motion for new trial by generally complaining that unadmitted evidence had been considered by the jury (CR 253). At the hearing on his motion for new trial, he offered the testimony of the presiding juror, Melissa Rackel (7 RR 137-57). She testified that the exhibit caused a juror to comment that after working in his position for almost 40 years, people like Washington "tend to get old and cocky or arrogant, set in their ways, and they don't take care – or they don't do their job the way they should because they've been doing it this way for so long" (7 RR 139). She also testified that she believed the exhibit had some impact on deliberations (7 RR 139:23-25).

The question for this Court is whether the presence of the exhibit in the jury room probably caused the rendition of an improper verdict. TEX. R. APP. P. 44.1(a); *Country Village Homes, Inc. v. Patterson*, 236 S.W.3d 413 (Tex.App.— Houston [1st Dist.] 2007, pet. granted, judgm't vacated w.r.m.); *Mid-South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 388 (Tex.App.—Texarkana 1990, writ denied). Put another way, for the jury's exposure to the exhibit to constitute reversible error, this Court must determine that the jury's verdict probably resulted *directly* from the presence of the exhibit in the jury room. *Id.*

29

The record in this case does not support a conclusion that the exhibit in question probably resulted in the rendition of an improper verdict. As discussed in response to Washington's first issue, the evidence in this case was very one-sided. Washington offered the testimony of only a single witness, and her testimony was brief and limited to the tolling of the statute of limitations for the causes of action of minors (4 RR 218:18 – 221:6). And in his own testimony (which the Commission offered), Washington never directly refuted the evidence proving his misconduct. Nor did he offer documentary evidence to refute the evidence against him. In such a lopsided case, it is difficult to imagine that the jury would have decided in Washington's favor but for their consideration of a document showing that his law license was suspended for fifteen days nearly nineteen years earlier as a result of the non-payment of the attorney occupation tax and/or associated penalties or interest.

Moreover, the lack of any rational relationship between the prior administrative suspension and the jury issues underscores the harmlessness of the jurors' awareness of the suspension. They were asked (1) whether Washington neglected Mr. Gobert's legal matter, (2) whether he failed to keep Ms. Carter and Mr. Gobert reasonably informed, (3) whether he failed to comply with Ms. Carter's and Mr. Gobert's reasonable requests for information, (4) whether he failed to surrender papers to which Mr. Gobert was entitled, and (5) whether he engaged in

conduct involving dishonesty, deceit, or misrepresentation (CR 137-45). No reasonable juror would conclude that because of a very brief nineteen-year-old administrative suspension for non-payment of a tax and/or associated penalties or interest, it is more likely that Washington committed these acts.

The presiding juror's testimony cannot change the utter lack of significance of the information in question. The record simply does not support a conclusion that the jury probably would have rendered a different verdict if they had not seen Exhibit 1.

## III. Washington's complaints regarding the jury charge are without merit because the charge properly tracked the language of the disciplinary rules and Washington failed to preserve his charge complaints.

In his next issue, Washington complains about the jury charge. This Court reviews a claim of charge error for an abuse of discretion. *McIntyre v. Comm'n for Lawyer Discipline*, 247 S.W.3d 434, 443 (Tex.App.—Dallas 2008, pet. denied).

A trial court has broad discretion in submitting jury questions (and even more discretion when submitting jury instructions) as long as they fairly place the disputed issues before the jury. *Id.* In a case of attorney discipline, the jury charge should track the language of the disciplinary rules as closely as possible because the disciplinary rules are treated like statutes. *Bellino v. Commission for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex.App.—Dallas 2003, pet denied).

31

In this case, Washington complains that the trial court did not provide adequate instructions to the jury. Appellant's Br. 42-45. But as required, the jury charge closely tracked the language of the disciplinary rules (CR 140-44). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(b)(1), 1.01(c), 1.03(a), 1.15(d), 8.04(a)(3). [7]

In addition, Washington has not shown that he submitted to the trial court and the trial court refused any instruction(s) in substantially correct form. "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278. And a party must submit an objection to the jury charge in writing or by dictating the objection to the court reporter before the court reads the charge to the jury. TEX. R. CIV. P. 272. The failure to comply with these requirements waives any error. *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 891-92 (Tex.App.—El Paso 2005, pet. denied). In this case, there is no record that Washington (1) submitted substantially correct instructions or (2) made objections

---

[7] Washington argues that the charge should have asked about factual issues such as whether Washington informed his clients about the trial setting, dismissal, and motion to reinstate. Appellant's Br. 43. However, the parties are entitled to have only *controlling* issues submitted to the jury, and the factual issues identified by Washington are mere evidentiary issues rather than controlling issues. *See Collins v. Beste*, 840 S.W.2d 788, 790 (Tex.App.—Fort Worth 1992, writ denied) (explaining that a controlling issue is one that requires a factual determination to render judgment in a case).

to the court's charge on the record prior to the reading of the charge to the jury. Thus, Washington waived his arguments regarding the charge.

Washington's arguments also hint at a complaint regarding the Commission's failure to put on expert testimony, but any such complaint is misplaced.[8] Expert testimony is not required in a disciplinary proceeding against an attorney because a disciplinary proceeding is "'not an attorney malpractice case where the standard of care is at issue. Rather, [it] is a disciplinary proceeding where the appropriate interpretation of the Rules of Conduct and a factual determination of whether [the attorney's] conduct met or violated the Rules is at issue.'" *McIntyre*, 247 S.W.3d at 447 (citation omitted).

## IV. The "cumulative error" doctrine is irrelevant because the jury's verdict is based on compelling evidence of Washington's misconduct rather than on error by the trial court.

The doctrine of cumulative error allows a reviewing court to reverse a judgment when the record shows a number of errors, "'no one instance being sufficient to call for a reversal, yet all the instances taken together may do so.'" *University of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 205 (Tex.App.—Austin 1991, no writ) (citation omitted). To show cumulative error, the complaining party must show that the jury would have rendered a favorable verdict for that party but

---

[8] Washington's questions during the hearing on his motion for new trial hinted at the same complaint (7 RR 147:1 – 148:8).

for the alleged errors. *Rhey v. Redic*, 408 S.W.3d 440, 462 (Tex.App.—El Paso 2013, no pet.).

In this case, the verdict rests solidly on the evidentiary record. The evidence of Washington's professional misconduct was compelling. The Commission's witnesses testified convincingly that he not only failed to keep them informed regarding the status of the lawsuit or provide them with their complete file but also affirmatively misled them. And the documentary evidence left no room for doubt about his neglect of the case. Washington offered nothing to directly refute the compelling evidence presented by the Commission. As such, the record soundly contradicts any notion that the jury would have rendered a verdict favorable to Washington but for the alleged procedural errors that he has raised on appeal.

## V. The trial court did not abuse its broad sanctions discretion.

Washington raises two complaints regarding his sanctions – that the trial court erred by denying his request for the jury to impose sanctions and that the sanctions are excessive. Neither complaint has merit.

### A. It is well settled that the trial court, not the jury, determines the appropriate sanction(s) for attorney misconduct.

Even in a disciplinary case tried to a jury, "the trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *State v. O'Dowd*, 312 S.W.2d 217, 221 (Tex.

1958). "What is unmistakenly clear, and highly significant, is that when a respondent attorney elects a jury trial, the jury may only render a verdict on whether the attorney has committed acts of misconduct. The jury is not permitted to determine sanctions." *In re Caballero*, 441 S.W.3d 562 (Tex.App.—El Paso 2013, orig. proceeding).

As Washington notes in his brief, the State Bar Act states that the Supreme Court may not adopt a rule abrogating the right to a jury trial in a disbarment proceeding. TEX. GOV'T CODE ANN. § 81.077(a) (West 2015). The rule that delegates sanctions authority to the trial court does not conflict with § 81.077(a) because it does not "abrogate" the right to a jury trial. *See* TEX. RULES DISCIPLINARY P. R. 3.09 (providing that the trial court determines sanctions if a jury finds misconduct).

§ 81.077(a) should be construed according to its ordinary meaning, which leads to the inevitable conclusion that it does not conflict with Rule 3.09. *Jaster v. Comet II Constr.*, 438 S.W.3d 556, 562-63 (Tex. 2014). To determine a term's ordinary meaning, dictionaries are a good starting point. *Id.* at 563. Black's Law Dictionary defines "abrogate" as "[t]o annul, cancel, revoke, repeal, or destroy; . . . to repeal a former law by legislative act, or by usage."[9] BLACK'S LAW DICTIONARY 8 (6th ed. 1990). Merriam-Webster similarly defines "abrogate" as "to

---

[9] Black's also notes that "abrogation" is distinct from "derogation, which implies the taking away only some part of a law." BLACK'S LAW DICTIONARY 8 (6th ed. 1990).

end or cancel (something) in a formal or official way." *Merriam-Webster Online Dictionary*, http://merriam-webster.com/dictionary/abrogate (last visited Oct. 22, 2015).

Clearly, then, Rule 3.09's delegation of sanctions authority to the trial court does not "abrogate" a respondent attorney's right to a jury trial because it does not annul, cancel, revoke, repeal, or destroy the right. To the contrary, the disciplinary rules preserve the right to a jury trial regarding the occurrence of professional misconduct.

*Hanners v. State Bar of Tex.*, 860 S.W.2d 903 (Tex.App.—Dallas 1993, writ dism'd), does not support Washington's position on this issue. It merely provides that, pursuant to a prior version of the disciplinary rules, a respondent attorney was entitled to a jury trial as provided for by the common law and the rules of civil procedure. *Id.* at 910-11. Importantly, the *Hanners* court specifically noted that it "found no provision of the State Bar Rules which disallows a jury under the facts of this case." *Id.* at 911. In the instant case, however, the current disciplinary rules explicitly delegate sanctions authority to the trial court. *See* TEX. RULES DISCIPLINARY P. R. 3.09 (providing that the trial court determines sanctions if a jury finds misconduct).

**B. The sanctions in this case are not excessive in light of the seriousness of Washington's misconduct and the egregious harm to his clients.**

Because the trial court has broad discretion to determine the appropriate sanction(s) for attorney misconduct, a reviewing court must determine whether the trial court acted without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004); *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 888 (Tex.App.—Dallas 2011, pet. denied). As long as the record holds some evidence of probative and substantive character to support the trial court's action, no abuse of discretion can be shown. *Continental Cas. Co. v. Davilla*, 139 S.W.3d 374, 378 (Tex.App.—Fort Worth 2004, pet. denied).

In determining sanctions for attorney misconduct, the trial court is to consider the factors set forth in Rule 3.10 of the Texas Rules of Disciplinary Procedure.[10] *Kilpatrick*, 874 S.W.2d 659; *Olsen*, 347 S.W.3d 889. However, the court need not find that every factor set forth in Rule 3.10 is implicated before imposing even the most severe sanction – disbarment. *Olsen*, 347 S.W.3d 889.

---

[10] The factors set forth in Rule 3.10 are (1) the nature and degree of the attorney's misconduct, (2) the seriousness of and circumstances surrounding the misconduct, (3) the loss or damage to clients, (4) the damage to the profession, (5) the assurance that those who seek legal services in the future will be insulated from the type of misconduct found, (6) the profit to the attorney, (7) the avoidance of repetition, (8) the deterrent effect on others, (9) the maintenance of respect for the legal profession, (10) the conduct of the attorney during the course of the disciplinary proceedings, (11) the trial of the case, (12) other relevant evidence concerning the attorney's personal and professional background, and (13) the attorney's disciplinary record. TEX. RULES. DISCIPLINARY P. R. 3.10.

Moreover, even a single act of misconduct may be sufficient to support severe sanctions. *Kilpatrick*, 874 S.W.2d 659; *Olsen*, 347 S.W.3d 889.

In this case, the sanctions fall well short of disbarment. The trial court actively suspended Washington's law license for one year, imposed a three-year probation, and ordered Washington to pay the Commission's attorneys' fees as an ancillary sanction. The nature of the misconduct provides ample justification for the sanctions.

Washington neglected his clients' lawsuit to such an extent that it was dismissed for want of prosecution. And his clients remained unaware of the dismissal for more than two years after the court of appeals affirmed it because Washington led them to believe that their suit was still pending. In response to direct questions from his clients regarding the status of the lawsuit, Washington withheld the truth.

The consequences to Washington's clients were devastating. Not only did they lose their cause of action, which was potentially worth hundreds of thousands of dollars, they also suffered a severe emotional blow because of the nature of their legal problems and Washington's callous disregard of their interests. Under the circumstances, the sanctions in this case do not reflect any abuse of discretion.

## PRAYER

Because the evidence provides ample support for the judgment and Washington has failed to show reversible error, Appellees respectfully pray that this Court affirm the judgment of the trial court in all respects.

RESPECTFULLY SUBMITTED:

LINDA A. ACEVEDO
CHIEF DISCIPLINARY COUNSEL

LAURA BAYOUTH POPPS
DEPUTY COUNSEL FOR ADMINISTRATION

CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL

OFFICE OF THE CHIEF DISCIPLINARY COUNSEL
P.O. BOX 12487
AUSTIN, TEXAS 78711-2487
512.427.1350; 1.877.953.5535
FAX: 512.427.4167


/s/ Cynthia Canfield Hamilton
CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL
STATE BAR OF TEXAS
STATE BAR CARD NO. 00790419
ATTORNEYS FOR APPELLEE

CERTIFICATE OF COMPLIANCE

Pursuant to the Texas Rules of Appellate Procedure, the brief of the Commission for Lawyer Discipline contains approximately 7,749 words, which is less than the total words permitted by the TRAPs. Counsel relies on the word count of the computer program used to prepare this brief.

/s/ Cynthia Canfield Hamilton
CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL
STATE BAR OF TEXAS

CERTIFICATE OF SERVICE

This is to certify that the above and foregoing brief of the Commission for Lawyer Discipline has been served on Appellant, Mr. Craig A. Washington, by and through his attorneys of record Mr. Michael A. Stafford, Ms. Katharine D. David, Ms. Stacy R. Obenhaus, and Mr. John MacVane, Gardere Wynne Sewell LLP, 2000 Wells Fargo Plaza, 1000 Louisiana Street, Houston, Texas 77002, by electronic service through this Court's electronic filing service provider on the 23rd day of October 2015.

/s/ Cynthia Canfield Hamilton
CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL
STATE BAR OF TEXAS

No. 03-15-00083-CV
_____

# In the Court of Appeals
# Third District of Texas
# Austin, Texas

_____

CRAIG A. WASHINGTON,

APPELLANT

V.

COMMISSION FOR LAWYER DISCIPLINE,

APPELLEE

_____

*Appealed from the 335th District Court*
*Of Bastrop County, Texas*
*Honorable George Gallagher, Judge Presiding*

_____

APPENDIX TO BRIEF OF APPELLEE
COMMISSION FOR LAWYER DISCIPLINE

_____

LINDA A. ACEVEDO
CHIEF DISCIPLINARY COUNSEL

LAURA BAYOUTH POPPS
DEPUTY COUNSEL FOR ADMINISTRATION

CYNTHIA CANFIELD HAMILTON
SENIOR APPELLATE COUNSEL

OFFICE OF THE CHIEF DISCIPLINARY
COUNSEL

P.O. BOX 12487
AUSTIN, TEXAS 78711-2487
512.427.1350; 1.877.953.5535
FAX: 512.427.4167

41

No. 03-15-00083-CV
_____

# In the Court of Appeals
# Third District of Texas
# Austin, Texas

_____

CRAIG A. WASHINGTON,

APPELLANT

V.

COMMISSION FOR LAWYER DISCIPLINE,

APPELLEE

_____

*Appealed from the 335th District Court*
*Of Bastrop County, Texas*
*Honorable George Gallagher, Judge Presiding*

_____

APPENDIX TO BRIEF OF APPELLEE
COMMISSION FOR LAWYER DISCIPLINE

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellee, the Commission for Lawyer Discipline, submits the following record excerpts in support of its brief:

APPENDIX 1:    Opinion of the Eighth Court of Appeals (affirming dismissal of lawsuit for want of prosecution)

42

# Appendix 1

§

§

IN THE INTEREST OF N.T.H.      §

§

§

§

§

No. 08-10-00021-CV

Appeal from the

9th District Court

of Montgomery County, Texas

(TC# 06-09-09220-CV)

## O P I N I O N

This is an appeal from an order overruling a motion to reinstate a case after dismissal for want of prosecution. Appellants, Michael LaPaul Gobert and Lance C.L. Black, representing the interests of N.T.H., a minor child, raise one issue contending that the trial court abused its discretion by not granting its motion to reinstate. We affirm.

## BACKGROUND

N.T.H.'s mother owned a tract of land located in Montgomery County, Texas. On August 15, 2005, N.T.H.'s mother conveyed a deed to Appellee, Craig Bush, leaving him her property. In return, N.T.H.'s mother received no consideration from Appellee for the conveyance.

On September 21, 2006, Appellants filed suit to rescind and cancel the deed, alleging that the deed was void as N.T.H.'s mother was mentally ill at the time of the conveyance and therefore lacked the mental capacity to "execute, acknowledge and deliver the deed" to Appellee. Appellee filed a general denial on November 22, 2006. Two-and-a-half years later, on April 22, 2009, the trial court issued a docket control order. That order set the case for trial for October 5, 2009, and instructed both parties to: (1) complete discovery 45 days before trial; (2) file an agreement for

mediation stating the name of an agreed mediator and the date of the same, 30 days before trial; (3) file motions for continuance or settlement 20 days before trial; (4) file a list of exhibits, witnesses and depositions; and (5) attend a pretrial hearing on October 2, 2009, and file any proposed jury questions by that date. The docket control order further stated that failure to attend "PRE-TRIAL" may result in case dismissal. Following the court's order, Appellants never filed an agreement to mediate, a motion for continuance or settlement, or a list of exhibits, witnesses or depositions. Nor does the record reflect that discovery was completed. However, the record does show that Appellants failed to attend the scheduled pretrial hearing and the trial. Consequently, on October 14, 2009, the trial court ordered the case dismissed for want of prosecution. Subsequently, Appellants filed a motion to reinstate the case, alleging that counsel's failure to attend pretrial and trial was due to his participation in a criminal case on October 2, 2009, and October 5, 2009. The trial court denied the motion.

## DISCUSSION

In a single issue, Appellants contend that the trial court abused its discretion by denying their motion to reinstate after dismissal for want of prosecution. Specifically, they contend that counsel's failure to appear at the pretrial hearing and later at trial "was not intentional or the result of conscious indifference because he was in trial on a murder case . . . ." However, in reviewing the entire history of the case, we discern no abuse of discretion in the trial court's denial of their motion to reinstate.

### Standard of Review

We review the trial court's denial of a motion to reinstate for an abuse of discretion. *Herrera v. Rivera*, 281 S.W.3d 1, 8 (Tex. App. – El Paso 2005, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex.

1985).

To determine whether a denial of a motion to reinstate constitutes an abuse of discretion, we look to whether a party prosecuted its case with due diligence. *Herrera*, 281 S.W.3d at 8. When reviewing whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case, including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Bilnoski v. Pizza Inn, Inc.,* 858 S.W.2d 55, 58 (Tex. App. – Houston [14th Dist.] 1993, no pet.).

*Analysis*

In this instance, Appellants argue that counsel's inability to attend the pretrial hearing and trial was due to a scheduling conflict. Specifically, counsel alleges that he was not able to appear because he was at jury selection and trial in another court, defending a murder case. Thus, Appellants conclude that counsel's failure to appear was neither intentional nor the result of conscious indifference. *See* TEX. R. CIV. P. 165a(3) (providing for reinstatement of the case upon finding "that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained").

However, in considering the entire history of the case, including, but not limited to, the length of time the case was on file, the extent of activity in the case, whether a trial setting had been arranged, and whether reasonable excuses for delay existed in order to determine whether Appellants' counsel was diligent in prosecuting its case, we note that: (1) this case was originally filed in September 2006, and had been on file for over three years at the time it was scheduled to go to trial; (2) there was no dispute that counsel received notice of the pretrial hearing and trial setting;

(3) the docket control order irrefutably stated that failure to attend pretrial may result in dismissal of the case; and (4) prior to the trial setting, counsel failed to file any pretrial motions within stated deadlines and failed to provide witness and deposition lists, proposed jury questions, or a list of discovery exhibits as required by the control order. Appellants provide no explanation for these omissions. Although they represent that counsel gave a reasonable explanation or excuse for his failure to appear for the pretrial hearing and trial, the record reflects that no motion for continuance was timely filed pursuant to the court's docket control order or that the judge was ever informed of the scheduling conflict. Appellants have failed to cite, and we have been unable to locate any case law stating that the trial court abused its discretion by denying Appellants' motion for reinstatement under similar circumstances. Based on these facts we cannot conclude Appellants were diligent in prosecuting the case. After carefully reviewing the entire record, we find no abuse of discretion in the trial court's denial of the motion for reinstatement after dismissal for want of prosecution. *See Fox v. Wardy,* 234 S.W.3d 30, 33 (Tex. App. – El Paso 2007, pet. dism'd w.o.j.) (dismissal upheld for failure to appear at pretrial); *Garcia v. Mireles*, 14 S.W.3d 839, 843 (Tex. App. – Amarillo 2000, no pet.) (dismissal upheld for failure to appear at court-ordered mediation); *Shook v. Gilmore & Tatge Mfg. Co.*, 951 S.W.2d 294, 298 (Tex. App. – Waco 1997, writ denied) (dismissal upheld for failure to appear due to the breakdown of a good calendaring system). Accordingly, Appellants' sole issue is overruled.

## CONCLUSION

Having overruled Appellants' issue, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

October 6, 2010

Before Chew, C.J., McClure, and Rivera, JJ.